United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-61014
_____

NYAKUNDI JOHN OMARI,

Petitioner,

versus

ALBERTO R. GONZALES,
U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order from
the Board of Immigration Appeals

_____

Before GARWOOD, SMITH and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

Nyakundi John Omari (Omari) petitions for review of an order by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's order that Omari be removed from the United States. We hold that the record does not reflect that the prior conviction on which the removal order was based was for an aggravated felony, and we accordingly grant the petition for review, vacate the removal order, and remand to the BIA.

**Facts and Proceedings Below**

Omari is a native of Kenya who was admitted to the United States in March 1990. In May 1998, he was convicted in Minnesota state court for fifth degree assault against his wife. In June 2001, he was convicted based on his guilty plea in the Eastern District of Texas for conspiracy to commit interstate transportation of stolen property, contrary to 18 U.S.C. §§ 371 and 2314.[1] Specifically, Omari pleaded guilty to Count One of a two-count indictment naming him and five other named co-conspirators as well as "others known and unknown."

Count One of the indictment includes a description of a scheme in which one named co-conspirator (Lodhi) (and others known but unnamed) "would burglarize travel agencies and steal blank airline tickets," and another named co-conspirator (Barney) would create forged airline tickets using passenger and destination information provided by several named co-conspirators, including Omari, and that those co-conspirators would sell the stolen tickets through travel agencies that they operated. Among the overt acts alleged was that in May 1997, Lodhi and other unnamed known persons "burglarized Dimension Travel and stole 3,000 blank airline tickets." In addition to selling stolen airline tickets, Omari was

---

[1]Conspiracy under 18 U.S.C. § 371 includes "conspir[ing] either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose," where "one or more of" those so conspiring does "any act to effect the object of the conspiracy." 18 U.S.C. § 371.

2

alleged to have traveled using some of the tickets. Of twenty-two overt acts in furtherance of the conspiracy alleged in Count One, four were allegedly committed by Omari, including three trips allegedly taken using stolen airline tickets and one sale of two stolen tickets. Count One specifically charges that Omari and five named others (and "others known and unknown") "knowingly and willfully conspired to commit the following crime against the United States: interstate transportation of stolen, converted and fraudulently obtained property, in violation of Title 18, United States Code, Section 2314."

Count Two of the indictment charged the substantive offense of interstate transportation of stolen property contrary to 18 U.S.C. § 2314.[2] The count consists in large part of an extensive table of airline ticket numbers, with corresponding dollar values, travel dates, and destinations. Count Two was dismissed as to Omari when he pleaded guilty to Count One.

As a result of his guilty plea, Omari was sentenced on Count One to six months' imprisonment, three years' probation, and

_____

[2]Count two states that Omari and the other five persons named in count one (and others known and unknown) "did unlawfully transport, transmit and transfer, and cause to be transported, transmitted, and transferred in interstate and foreign commerce, from Plano, Texas to the places indicated below, goods, wares, and merchandise, to wit: airline tickets having an aggregate value of $5,000.00 or more, the said defendants then and there well knowing said goods, wares, and merchandise to have been stolen and converted, all as more particularly set out below. . . ." The remainder of the count consists of the table of specific airline tickets.

restitution of $16,366.48, for which he was jointly and severally liable with two codefendants.[3]

In October 2001, the Immigration and Naturalization Service (INS)[4] initiated deportation proceedings against Omari, alleging that he was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, under 8 U.S.C. § 1227(a)(2)(A)(ii) as an alien convicted of two or more crimes involving moral turpitude, and under 8 U.S.C. § 1227(a)(2)(E)(i) as an alien convicted of a crime of domestic violence. In March 2003, the immigration judge (IJ) determined that Omari was subject to removal as an alien convicted of an aggravated felony, the aggravated felony being a fraud offense as defined by 8 U.S.C. § 1101(a)(43)(M) and a conspiracy as defined by 8 U.S.C. § 1101(a)(43)(U).[5] The IJ also denied Omari's application for cancellation of removal under 8 U.S.C. § 1229b(a), determining that Omari was statutorily ineligible for consideration for such relief

---

[3] It appears from our opinion in *United States v. Onyiego*, 286 F.3d 249 (5th Cir. 2002), that three of Omari's co-defendants were convicted following trial of counts one and two of this same indictment, and we affirmed their convictions and sentences (except for a minor modification as to the amount of restitution ordered respecting one defendant). Our opinion there reflects that the sentence of one of these co-defendants included 115 months' imprisonment, another 24 months, and the third nine months.

[4] Since March 2003, the deportation functions of the INS are with the Bureau of Immigration and Customs Enforcement under the Department of Homeland Security.

[5] 8 U.S.C. § 1101(a)(43)(M) defines "aggravated felony" as including "an offense that–(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(U) defines an "aggravated felony" as including "an attempt or conspiracy to commit an offense described in this paragraph." The IJ apparently did not reach the other grounds of removal alleged (two or more crimes of moral turpitude or a crime of domestic violence).

4

because of his aggravated felony conviction.[6] The IJ ordered that Omari be deported to Kenya. Omari appealed the decision to the BIA, contending that his prior conviction was not for an aggravated felony. The BIA affirmed without opinion.

## Discussion

### I. Jurisdiction and Standard of Review

Under 8 U.S.C. § 1252(a)(2)(C) this court does not have jurisdiction to review the removal decision if Omari's prior conviction was an aggravated felony.[7] However, we do have jurisdiction to determine our own jurisdiction, *i.e.*, to determine whether the conviction qualifies as an aggravated felony. *Lopez-Elias v. Reno*, 209 F.3d 788, 791 & n.3 (5th Cir. 2000). With respect to determining whether a prior conviction falls within a provision of the Immigration and Nationality Act (INA), we "accord substantial deference to the BIA's interpretation of the INA" itself and definitions of phrases within it. *Smalley v. Ashcroft*,

---

[6]  Section 1229b(a) provides:

"**(a)** Cancellation of removal for certain permanent residents
     The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien –
     (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
     (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
     (3) has not been convicted of any aggravated felony."

[7]  8 U.S.C. § 1252(a)(2)(C) provides in relevant part that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . of this title," and 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

354 F.3d 332, 335–36 (5th Cir. 2003) (internal quotation omitted).

We then review *de novo* whether the particular statute that the prior conviction is under falls within the relevant INA definition. *Smalley*, 254 F.3d at 336; *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002).

## II.    *Involving Fraud or Deceit*

For Omari to have been convicted of an aggravated felony under relevant provisions of 8 U.S.C. § 1101(a)(43)(M) and (U), his conviction must be for an offense "involv[ing] fraud or deceit in which the loss to the victim or victims exceeds $10,000," or for an attempt or conspiracy to commit such an offense.  8 U.S.C. §§ 1101(a)(43)(M), (U).   The IJ's opinion indicates that the indictment and judgment for Omari's conspiracy conviction made it clear that Omari was convicted of conspiring to violate the second paragraph of 18 U.S.C. § 2314, which the IJ found to be an offense involving fraud or deceit.[8]   Omari argues that the conspiracy alleged in count one was to commit the offense denounced by the

---

[8]18 U.S.C. § 2314 provides in relevant part:
"Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more; or
. . . .
Shall be fined under this title or imprisoned not more than ten years, or both.
. . . ."

6

first paragraph of 18 U.S.C. § 2314, which does not necessarily involve fraud or deceit, and that he did not plead guilty to a conspiracy to violate the second paragraph of section 2314.

Although neither the IJ nor the BIA defined "fraud or deceit," the BIA has argued in other cases that "fraud" and "fraud and deceit" as appearing in 8 U.S.C. § 1101(a)(43)(M) should be used in their commonly understood legal sense.  *See, e.g.*, *Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002).  Black's Law Dictionary defines "fraud" as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," and "deceit" as "the act of intentionally giving a false impression."  BLACK'S LAW DICTIONARY 413, 670 (7th ed. 1999).

In determining whether a prior conviction qualifies as an aggravated felony (or meets other similar criteria for immigration or sentence enhancement purposes), we employ a categorical approach in which we look at the statute under which the alien was convicted rather than at the particular underlying facts.  *Lopez-Elias*, 209 F.3d at 791.  When the aggravated felony provision uses "involves" language, we inquire whether violation of the statute necessarily entails the "involved" behavior.  *See United States v. Montgomery*, 402 F.3d 482, 486–88 (5th Cir. 2005) (for a prior conviction to involve a serious potential risk of physical injury, violation of the statute convicted under must necessarily entail a serious potential risk of physical injury).  In the case of 8 U.S.C. §

7

1101(a)(43)(M), we therefore consider whether violation of 18 U.S.C. § 2314 necessarily entails fraud or deceit.

The first five paragraphs of 18 U.S.C. § 2314 set out five alternative ways that the statute can be violated. The first paragraph describes violation by "whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud." 18 U.S.C. § 2314. Violation of this paragraph does not necessarily entail fraud or deceit, since the paragraph can be violated by transporting or transferring goods known to be stolen. For example, the goods could be transferred to someone who knew they were stolen, so that there would be no misrepresentation or deceit. A conviction under 18 U.S.C. § 2314 is therefore not necessarily a conviction for an offense involving fraud or deceit.

We recognize an exception to the categorical approach when a statute is divisible into discrete subsections, violation of one or more of which would in itself meet the criterion at issue. *See Smalley*, 354 F.3d at 336; *Omagah*, 288 F.3d at 260; *Hamdan v. United States*, 98 F.3d 183, 187 (5th Cir. 1996) (all noting this exception for the purpose of determining whether a conviction was for a crime involving moral turpitude). If the statute is divisible, we look to the record of conviction to determine whether the conviction was necessarily for a particular subsection of the statute that meets

8

the criterion (here, that of involving fraud or deceit). In the case of guilty plea convictions, the Supreme Court has held that examination of the record of conviction for this purpose may include consideration of the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 125 S.Ct. 1254, 1257 (2005) (concerning the assessment of a prior burglary conviction as a "violent felony" for sentence enhancement purposes). Documents not of that kind, including police reports and complaint applications, may not be considered. *Id.*

In the instant appeal, there is no plea agreement or plea colloquy transcript in the record of the immigration proceedings.[9] We therefore have only the indictment and the district court's judgment to consider in determining whether Omari necessarily pleaded guilty to a subsection of the statute involving fraud or deceit. The judgment declared Omari guilty of violating 18 U.S.C. § 371 through "Conspiracy to Commit Interstate Transportation of Stolen Property" as set out in Count One of the indictment. The judgment therefore does not in itself indicate that Omari was necessarily found guilty of an offense involving fraud or deceit.

---

[9]The presentence report ordered by the district court indicates that there was a written plea agreement, and Omari's counsel stated at oral argument that there was also a plea colloquy transcript, but neither the plea agreement nor any of the plea colloquy transcript were in the record before the IJ or the BIA (nor are they otherwise before us).

9

The specific crime charged in Count One of the indictment is conspiracy "to commit . . . interstate transportation of stolen, converted and fraudulently obtained property in violation of Title 18, United States Code, Section 2314." This closely tracks the language of the first paragraph of 18 U.S.C. § 2314, which does not necessarily involve fraud or deceit, as noted above.[10] The scheme as laid out in the indictment refers to stolen airline tickets, not fraudulently obtained ones, so that nothing in the indictment indicates that Omari pleaded guilty to transporting fraudulently obtained goods.[11]

The IJ concluded that Omari had been convicted of violating the second paragraph of 18 U.S.C. § 2314, which does describe an offense involving fraud (see note 8 *supra*). The indictment does not support this conclusion, however. The second paragraph of

---

[10]Reference in the indictment to "stolen, converted *and* fraudulently obtained property," as opposed to "stolen, converted *or* taken by fraud" as recited in the statute, does not mean that Omari was necessarily convicted of transferring fraudulently obtained property. Indictments often allege conjunctively elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty. *See Valansi*, 278 F.3d at 216 n.10; *United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972).

[11]If the tickets had been fraudulently obtained, Omari's conviction for knowingly transporting or transferring them might well have been a conviction for an offense involving fraud or deceit. Whether an offense "involves" fraud is a broader question than whether it *constitutes* fraud. *Cf. United States v. Winbush*, 407 F.3d 703, 707–08 (5th Cir. 2005) (attempted possession of controlled substance with intent to distribute is offense "involving . . . manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," and therefore a "serious drug offense"); *Richards v. Ashcroft*, 400 F.3d 125, 129–30 (2d Cir. 2005) (possession of forged instrument with intent to defraud or deceive is offense "relating to" forgery, though not actual forgery).

10

section 2314 refers to transport of persons rather than goods. *See, e.g.*, *United States v. Quintanilla*, 2 F.3d 1469, 1475 n.6 (7th Cir. 1993) (noting that the second paragraph "applies only to the interstate transportation of people, not property"); *United States v. Kelly*, 569 F.2d 928, 933 (5th Cir. 1978); *United States v. Thomas*, 377 F.3d 232, 236 (2d Cir. 2004). Violation of the second paragraph "requires the devising of a scheme to defraud *any* person of money by false representations and causing or inducing that person to travel in interstate commerce in furtherance of that scheme." *Kelly*, 569 F.2d at 933. Although Omari's selling of airline tickets as alleged in the indictment could be construed as an inducement of the ticket buyers to travel in interstate commerce, the description of the criminal scheme in the indictment does not indicate that the scheme was intended to defraud or deceive the ticket buyers (as opposed to the airlines), or that the ticket buyers were deceived as to the nature of the tickets. For the second paragraph of section 2314 to apply, the person being induced to travel must be the person being defrauded.

Because 18 U.S.C. § 2314 does not necessarily involve fraud or deceit, the judgment and indictment do not indicate that Omari was necessarily convicted of an offense involving fraud or deceit,[12] and

---

[12]Although some, but *not all*, of the "overt acts" alleged in the indictment do involve fraud, Omari could be guilty of conspiracy whether or not such fraud involving overt acts were committed, since under 18 U.S.C. § 371 there needs be only one overt act by one of the conspirators. Omari's guilty plea to Count One therefore does not necessarily constitute an admission to any particular one or more of the alleged overt acts.

11

the plea agreement and colloquy are not a part of the record, we must conclude that the record does not suffice to establish that Omari was convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M) or (U).

## Conclusion

Based on the record before us, we find that Omari's conviction was not shown to be an offense (or a conspiracy to commit the same) involving fraud or deceit, and we therefore do not consider whether Omari's conviction was shown to be an offense in which the loss to the victims exceeded $10,000. For the same reason, we do not reach Omari's additional argument, based on *Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004), that his offense is a hybrid fraud/theft offense which must satisfy the requirements of both 8 U.S.C. § 1101(a)(43)(M) and 8 U.S.C. § 1101(a)(43)(G).[13] Because Omari's conviction was not shown to be one for an aggravated felony, we do have jurisdiction over his petition for review.

The petition is GRANTED, the removal order is VACATED, and the case is REMANDED to the BIA for any further appropriate proceedings consistent with this opinion.

---

[13] Section 1101(a)(43)(G) is not met because Omari's term of imprisonment for his conviction was less than one year.

12