United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 5, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————
No. 04-60445
———————————————

ETETIM DAVID JAMES,

Petitioner,

versus

ALBERTO R. GONZALES, UNITED STATES ATTORNEY GENERAL,

Respondent.

-----------------------------
Petition for Review of an Order of the
Board of Immigration Appeals
-----------------------------

Before GARWOOD, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Petitioner appeals the Board of Immigration Appeals' reversal of an Immigration Judge's decision to terminate removal proceedings, contending that his conviction of aiding and abetting bank fraud was not an aggravated felony because it did not "involve" fraud or deceit and the demonstrated loss did not exceed $10,000. He also contends that the BIA may not enter an order of removal in the first instance, but must remand to the IJ. We dismiss in part and remand in part.

I

Etetim David James, a citizen and native of Nigeria, was admitted to the United States as a nonimmigrant in January 1986; he

obtained lawful permanent resident status in September 1987. In March 2000, James pleaded guilty to one count of aiding and abetting bank fraud,[1] involving a transaction with a credit union in the amount of $9,500. The judgment of conviction ordered James to serve a 24-month sentence and to pay restitution in the amount of $129,066.60.

In October 2001, as a result of James's conviction, the Immigration and Naturalization Service[2] filed a notice to appear charging James with deportability as an aggravated felon.[3] The INS charged that James's prior conviction constituted a crime involving "fraud or deceit," where the loss to the victim(s) exceeded $10,000.[4] James contested the applicability of both aggravated felony elements. Alternatively, James asserted that he was eligible for relief from removal.

The IJ determined that James's offense met the first element of § 1101(a)(43)(M)(i), as the statute requires only that the offense *involve* fraud or deceit, not that the conviction actually include fraud or deceit. However, refusing to consider the amount of restitution, the IJ agreed with James that the INS had failed to

---

[1] *See* 18 U.S.C. §§ 2 and 1344.

[2] The INS has since been abolished and its functions transferred to the Department of Homeland Security. For consistency, we refer to the relevant agency as the INS.

[3] 8 U.S.C. § 1227(a)(2)(A)(iii).

[4] 8 U.S.C. § 1101(a)(43)(M)(i).

2

demonstrate that the loss to the victims exceeded $10,000, since he pleaded guilty to a single count of only $9,500. Thus, the IJ terminated removal proceedings against James.

The government appealed, arguing, as it had before the IJ, that the restitution amount constituted the proper measure of loss to the victim(s). James reasserted that aiding and abetting bank fraud does not necessarily involve fraud or deceit and contended that the IJ otherwise had ruled correctly. The BIA affirmed the IJ's decision regarding the fraud element of the felony but reversed the IJ's calculation of the loss, using instead the amount of restitution. The BIA ordered James removed to Nigeria.


II

Pursuant to 8 U.S.C. 1252(a), James urges our review of the BIA decision. The government moved for dismissal of the appeal for want of jurisdiction.[5] We now determine whether we have jurisdiction to entertain James's request for review of the BIA's removal order.

We lack jurisdiction where a petitioner is found deportable for having committed an aggravated felony.[6] However, James

---

[5] We carried the government's motion with the case slated for oral argument.

[6] 8 U.S.C. §1252(a)(2)(C) (providing, in relevant part, that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section...1227(a)(2)(A)(iii)...of this title"); 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that "any alien who is convicted of an aggravated felony at any time after admission is deportable"); see also Omari v. Gonzales, 419 F.3d 303, 307

3

disputes that his offense qualifies as such; we retain jurisdiction to examine and decide the jurisdictional question, limited to whether the charged crime constitutes an aggravated felony.[7] Additionally, James argues that we have independent jurisdiction to address whether the BIA acted *ultra vires* in ordering removal. We discuss each jurisdictional argument in turn.

## III

We first address whether the BIA erred in ruling that James's prior conviction for aiding and abetting bank fraud constitutes an aggravated felony.

Eight U.S.C. § 1101(a)(43)(M)(i) defines an aggravated felony as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." The statute specifically includes convictions based on attempt and conspiracy but does not mention aiding and abetting.[8] James argues that since he pleaded guilty to aiding and abetting bank fraud rather than to bank fraud or to attempted bank fraud, his offense does not necessarily involve fraud. Additionally, he argues that the prior offense does not meet the statutory floor of loss to the victim(s)—$10,000.

---

n.7 (5th Cir. 2005).

[7] *Pichardo v. INS*, 104 F.3d 756, 758 (5th Cir. 1997); *Okoro v. INS*, 125 F.3d 920, 925 n.10 (5th Cir. 1997); *Balogun v. Ashcroft*, 270 F.3d 274, 278 (5th Cir. 2001); *Smalley v. Ashcroft*, 354 F.3d 332, 335 (5th Cir. 2003).

[8] *See* 8 U.S.C. § 1101(a)(43)(U).

4

Therefore, he contends that the BIA erred in reversing the IJ's determination that James's offense did not qualify as an aggravated felony.

A

The IJ, interpreting the word "involve" expansively, found that aiding and abetting bank fraud constitutes a crime that involves fraud or deceit under § 1101(a)(43)(M)(i).[9] We "'accord[] substantial deference to the BIA's interpretation of the INA' itself and definitions of phrases within it,"[10] and, then, conduct a *de novo* review of "whether the particular statute that the prior conviction is under falls within the relevant INA definition."[11] "Involves" requires that the offense "necessarily entails the 'involved' behavior."[12] We recognize that "[w]hether an offense 'involves' fraud is a broader question than whether it *constitutes* fraud."[13] "Fraud" and "deceit" retain their commonly understood

---

[9] Since the BIA adopted the opinion of the IJ with respect to the determination that James's prior conviction involved fraud or deceit, we review the IJ's opinion. *See Li v. Gonzales*, 420 F.3d 500, 506 (5th Cir. 2005) (stating that we review "only an order of the BIA...unless the IJ's decision has some impact on the BIA's decision"), *vacated on other grounds*, 429 F.3d 1153 (5th Cir. 2005).

[10] *See Omari*, 419 F.3d at 306.

[11] *Id*.

[12] *Id.* at 307; *see also Valansi v. Ashcroft*, 278 F.3d 203, 210 (3rd Cir. 2002) ("[T]he use of the word 'involves' expands the scope of § 1101(a)(43)(M)(i) to include offenses that have, at least as one element, fraud or deceit.").

[13] *Omari*, 419 F.3d at 309 n.11.

5

legal meanings.[14]

In determining whether an offense qualifies as an aggravated felony under the INA, we employ a categorical approach and look "at the statute under which the alien was convicted rather than at the particular underlying facts."[15] Thus, we ask whether the offense of aiding and abetting bank fraud necessarily entails, or has as at least one element, fraud or deceit.[16]

Turning first to the statute at issue, § 2 provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal;
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.[17]

"To be convicted of aiding and abetting, the defendant must have (1) associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture successful."[18]

---

[14] *Id* at 307. (citing *Valansi*, 278 F.3d at 209). Black's Law Dictionary defines "fraud" as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," and "deceit" as "the act of intentionally giving a false impression." BLACK'S LAW DICTIONARY 413, 670 (7th ed. 1999).

[15] *Id*.

[16] An exception to the categorical approach exists "when a statute is divisible into discrete subsections, violations of one or more of which would meet the criterion at issue." *Id.* at 308. "If a statute is divisible, we look to the record of conviction to determine whether the conviction was necessarily for a particular subsection of that statute that meets the criterion (here, that of involving fraud or deceit)." *Id*.

[17] 18 U.S.C. § 2.

[18] *United States v. Lombardi*, 138 F.3d 559, 561 (5th Cir. 1998).

"Association means that the defendant shared in the criminal intent of the principal."[19] "Participation means that the defendant engaged in some affirmative conduct designed to aid the venture."[20] Thus, James's conviction under § 2 and § 1344 necessarily entailed the criminal intent to see bank fraud committed, some affirmative conduct designed to aid the bank fraud, and his seeking, by his own action, to make the bank fraud successful.

Section 1344 criminalizes as bank fraud:

> knowingly execut[ing], or attempt[ing] to execute, a scheme or artifice—
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

The plain language of § 1344, therefore, provides that a violation of either subsection necessarily entails fraud or deceit.[21]

James argues that the exclusion of aiding and abetting offenses from the statutory framework "compels the conclusion that convictions under 18 U.S.C. § 2 are not included in the aggravated

---

[19] *United States v. Sorrells*, 145 F.3d 744, 753 (5th Cir. 1998).

[20] *Id.*

[21] Although we recognize an exception to the categorical approach, the exception only applies when violation of one or more discrete subsections of a statute also would not meet the criterion at issue. *See Omari*, 419 F.3d at 308-09. Therefore, § 1344 is not divisible such that one may look beyond the statute itself to determine whether an offense comports with the first element of § 1101(a)(43)(M)(i) because both of § 1344's subsections necessarily entail fraud or deceit. *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002). James admits as much.

7

felony definition."[22]  James also contends that as the aiding and abetting offense does not have as one of its elements fraud or deceit, it cannot constitute an aggravated felony under the INA. James further argues that aiding and abetting bank fraud requires only the requisite criminal intent, a desire to see the bank fraud succeed, and some affirmative conduct designed to aid the venture, conduct that may not necessarily entail fraud or deceit.[23] Therefore, James avers that the categorical approach results in the conclusion that James was not convicted of a crime involving fraud or deceit because, on the statute's face, it remains unknown if he engaged in fraudulent or deceitful conduct.  We are not persuaded.

All of James's contentions are susceptible to the same flaw: "Significantly, 'the aiding and abetting statute, 18 U.S.C. § 2, does not define a separate crime,' but rather provides another means of convicting someone of the underlying offense."[24]  Thus, the IJ did not err in ruling that aiding and abetting bank fraud

---

[22]  *See Thomas v. Goetzmann*, 337 F.3d 489, 499 (5th Cir. 2003) (stating the principle of statutory construction that "the expression of one thing implies the exclusion of another").

[23]  *See United States v. Morrow*, 177 F.3d 272 (5th Cir. 1999) (upholding a conviction for aiding and abetting bank fraud even though the defendant never caused false or fraudulent documentation to be submitted to the financial institution); *cf. Omari*, 419 F.3d at 309 n.12 ("Although some, but not all, of the "overt acts" alleged in the indictment do involve fraud, Omari could be guilty of conspiracy whether or not such fraud involving overt acts were committed, since under 18 U.S.C. § 371 there needs be only one overt act by one of the conspirators.  Omari's guilty plea to Count One therefore does not necessarily constitute an admission to any particular one or more of the alleged overt acts.").

[24]  *Sorrells*, 145 F.3d at 752.  *See Londono-Gomez v. INS*, 699 F.2d 475, 476 (9th Cir. 1983) (distinguishing aiding/abetting from misprision).

involves fraud or deceit because § 1344, the underlying offense, necessarily involves fraud.

B

Second, James argues that, by looking beyond the count to which he pleaded guilty, the BIA erred in overturning the IJ's determination that the amount of loss to the victims was less than $10,000.[25] Since aiding and abetting bank fraud does not itself define a monetary threshold, we look beyond the statute[26] to the record of conviction.[27] Accordingly, the IJ reasoned that since the count to which James pleaded guilty involved fraudulently causing a wire transfer in the amount of $9,5000, the crime did not constitute an aggravated felony requiring the loss to exceed

---

[25] *See Chang*, 307 F.3d at 1185-92 (stating that "[t]o adopt the government's approach would divorce the $10,000 requirement from the conviction requirement, *see* 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that an alien is deportable 'who is *convicted* of an aggravated felony' (emphasis added), because relevant conduct for sentencing purposes need not be admitted, charged in the indictment, or proven to a jury, in order to be used to impose a restitution order...").

[26] *Singh v. Ashcroft*, 383 F.3d 144, 159-61 (3d Cir. 2004) ("We turn now to the cases in which we did not confine ourselves to the formal categorical approach of *Taylor*. All three such cases...concerned 8 U.S.C. § 1101(a)(43)(M)(i).... In all three cases, the relevant criminal statute did not include a 'loss greater than $ 10,000' element. Yet in these cases we expressly rested our holding on the underlying facts about the amount of loss involved.... In the case of the enumerating statute, a departure from the formal categorical approach seems warranted when the terms of the statute invite inquiry into the facts underlying the conviction at issue. The qualifier 'in which the loss to the victim or victims exceeds $10,000' is the prototypical example–it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue."(internal citations omitted)).

[27] For guilty-plea convictions, the record of conviction includes "the 'charging document, written plea agreement, transcript of the plea colloquy, and any explicit finding by the trial judge to which the defendant assented.'" *Omari*, 419 F.3d at 308 (quoting *Shepard v. United States*, 125 S.Ct. 1254, 1265 (2005)). The plea agreement and the transcript of the plea colloquy are not part of the present record and are, therefore, not before us. *See id*.

9

$10,000.[28]

The BIA vacated the IJ's order after concluding that the amount of restitution James owed—based on conduct included in the indictment,[29] PSR,[30] and judgment of conviction[31]—constituted the proper amount to use in determining the amount of loss to the victims.[32]  Citing *Khalayleh v. INS*,[33] the BIA reasoned that the amount of loss should be calculated based on "the total loss from an entire fraudulent scheme," and the restitution amount "relates directly to the losses suffered by various financial institutions resulting from [James's] fraudulent check writing scheme."[34]

---

[28]  The IJ was primarily concerned with the differences in burden of proof; restitution amounts are decided based on a preponderance of the evidence, whereas, a deportability determination requires clear and convincing evidence. The IJ refused to look beyond the conviction for $9,500 and determine the propriety of the restitution amount.

[29]  The indictment charges a scheme of aiding and abetting bank fraud, with three counts totaling $36,450.

[30]  The PSR details a total "intended loss" of $186,470.

[31]  In the judgment of conviction, the district court ordered James to pay $129,066.60 in restitution. *See Karavolos v. Ashcroft*, 95 F. App'x 397, 398 (3d Cir. 2004) (unpublished) ("We do not have to reach the question of whether the amount of loss set forth in the PSR was properly considered because the judgment of conviction, admitted by the IJ, establishes the requisite loss by ordering that petitioner pay restitution of $ 60, 800.... Because the judgment of conviction, even without the PSR, sufficiently establishes that petitioner's offense involved a loss in excess of $ 10,000 and was an aggravated felony, we will dismiss the petition for lack of jurisdiction.").

[32]  James objected to the method of calculating the restitution amount in the PSR during the underlying sentencing hearing.

[33]  287 F.3d 978 (10th Cir. 2002).

[34]  *See also Ferreira v. Ashcroft*, 390 F.3d 1091, 1098 (9th Cir. 2004) (Explaining that, though "the terms "restitution" and "loss to the victim" are not necessarily interchangeable," there is no "rule that immigration judges may not look to a restitution order to determine an amount of loss to a victim. Rather...a restitution order does not establish the amount of loss when it directly contradicts the amount of loss specified in a plea agreement or

10

In *Khalayleh*, the alien was indicted on four counts of bank fraud, stemming from a check-kiting scheme in violation of 18 U.S.C. § 1344(1).[35] Each of the indictment's four counts incorporated language alleging a scheme by the alien to defraud two Colorado banks by depositing bad checks drawn on other accounts, depositing them into the two Colorado bank accounts, and, then, writing several checks for his personal use—four of which formed the bases for the four counts with which the alien was charged.[36] The alien pleaded guilty to one count of the indictment which listed a check in the amount of $9,308.[37] Importantly, in the plea, the alien agreed "to pay restitution in the amount of 'actual loss,' to be determined by the court at sentencing—" which the court determined to be $24,324.03.[38]

The Tenth Circuit determined that since the counts with which the alien was charged did not allege discrete instances of fraud involving only one check, but rather alleged a scheme to defraud that involved numerous checks, the total amount of all of the checks resulted in the proper amount of loss to the victims for the

---

indictment.").

[35]   287 F.3d at 979.

[36]   *Id.*

[37]   *Id.*

[38]   *Id.*

purposes of § 1101(a)(43)(M)(i).[39] In the instant case, similar to *Khalayleh*, James's indictment alleges a scheme to defraud, and neither party suggests that the plea agreement defines the amount of actual loss by either limiting the loss to count one or expanding the loss to the restitution amount.[40]

Additionally, James attacks the predicate of the restitution order — the PSR. He reurges his objection to the PSR which allegedly shows the amount of restitution ordered did not constitute the actual loss but, rather, represented the broader "intended loss."[41] James argues that the evidence of intended loss, which inflated the amount of restitution was, in part, based on outdated handwritten wire transfer requests and counterfeit checks found in his car. This contention is specious. The PSR documents

_____

[39] *Id.* at 980. In *dicta*, the court noted that if the alien had been charged with four discrete acts of fraud, rather then a scheme to defraud, regardless that he agreed to pay a greater amount of restitution than the check in the count to which he pleaded guilty, the court's inquiry may have been limited to the amount of the check in that one count. *Id.; see Chang*, 307 F.3d at 1185-92 (finding the loss not to reach $10,000 because the plea stated that the alien and the government agreed that the offense entailed "a loss to the victim of $605.30," despite other counts of bank fraud for which the proceeds, in total, exceeded the statutory bar); *see also Knutsen v. Gonzales*, 429 F.3d 733, 737 (7th Cir. 2005) (distinguishing *Khalayleh* on the grounds that all of the counts there were linked by a common scheme).

[40] Though citing *Chang*, James does not contend that the plea agreement language similarly limited the amount of actual loss to the $9,500.

[41] James points to the probation officer's response to James's objection to the amount of restitution in which the officer characterized the loss as "intended." James also cites a Second Circuit opinion concerning the amount of loss under § 1101(a)(43)(U); it is inapposite. In *Ming Lam Sui v. INS*, 250 F.3d 105 (2d Cir. 2001), the alien had been charged with and convicted of possession of counterfeit traveler's checks; by distinguishing "attempted loss" from "intended loss," the court held that the required loss to the victim was not met because an attempted loss requires both intent and an overt step—the latter of which was lacking with mere possession).

12

an intended loss totaling more than $186,470. Out of an abundance of caution, the evidence of expired transfer requests for $50,000 was not included this amount. Moreover, the restitution amount accounts only for executed fraudulent transfers— actual losses to First Flight Federal Credit Union, China Trust Bank, and First Community Credit Union— and well exceeds the $10,000 statutory floor.

James's conviction satisfies the requirements of § 1101(a)(43)(M)(i), and we, therefore, lack jurisdiction to grant review of the removal decision on this ground.


IV

James argues that independent jurisdiction exists to consider the alternative question of whether the BIA can order Petitioner removed in the first instance — without remanding the case to the IJ for further proceedings and without addressing relief from removal. James avers that if the BIA acted *ultra vires* in ordering him removed, jurisdiction exists to assess the validity of the removal order even if the "aggravated felony" conclusion remains intact.[42] We retain jurisdiction over substantial constitutional claims or questions of law, even in cases involving orders of

---

[42] Though briefed, Petitioner did not raise this issue in his petition for review. A petition for review from an agency decision must contain the names of the Petitioner and of the Respondent and must specify the order to be reviewed. FED.R.APP.P. 15(a)(2). A petitioner need not list all of the arguments to be made. *See id*. James briefed the issue; it is not abandoned. *Cf. Saodjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003).

removal otherwise removed from our consideration by the "jurisdiction stripping" provisions of INA §242(a)(2).[43]

The government responds, arguing that James failed to exhaust his claim in the administrative proceedings[44] and contending that the failure to raise the issue before the BIA or in a motion to reopen precludes our exercising jurisdiction. Specifically, the government contends that James forfeited his argument because he had sufficient opportunity to respond to the government's explicit request that the BIA order removal.[45] The government further argues that the error was merely procedural and fully correctable by the BIA;[46] if presented with the objection, the BIA could have remanded so that the IJ could enter the order of removal, obviating any concern. We are not persuaded that adequate notice existed, such that James should have anticipated and, thus, forfeited his

---

[43]    *Delgado-Reynua v. Gonzales*, 450 F.3d 596, 600 (5th Cir. 2006) (concluding that petitioner's challenge to BIA's entry of a removal order in the first instance was a question of law over which this court has jurisdiction).

[44]    "A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right."  8 U.S.C. § 1252(d)(1).

[45]    In *Noriega-Lopez v. Ashcroft*, the Ninth Circuit found that petitioner had exhausted his administrative remedies where the government requested remand and the BIA issued the order of removal *ab initio*.  335 F.3d 874, 880-81 (9th Cir. 2003) (holding that the BIA could not enter an order of removal in the first instance).  This factual difference does not bear on the ultimate question in the instant matter.  Moreover, the court in *Noriega-Lopez* also was persuaded that the petitioner had exhausted his administrative remedies because he was not obligated to file a motion to reopen; the court did not rely solely on the fact that the government had requested remand.

[46]    *See Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) ("Claims of due process violations, except for procedural errors that are correctable by the BIA, are generally not subject to the exhaustion requirement.").

14

argument by not raising it before the BIA prior to the ruling which created the alleged error. The government only requested in passing that the BIA order removal, with no discussion of the merits of the request.[47] Also, we have held that a motion to reopen is not a remedy available by right: "generally a motion to reopen is not required to exhaust administrative remedies under [the Act]."[48] James did not fail to exhaust his administrative remedies, and we find the issue here amenable to our consideration.

James argues that the BIA lacked statutory authority to order him removed, rendering the order a legal nullity, such that not addressing the issue would substantiate a void removal order.[49] Citing the Ninth Circuit case, *Noriega-Lopez*,[50] James argues that no final order of removal yet exists to affirm. In two recent cases, we addressed a related circumstance in which the BIA ordered removal, reversing the IJ, after the IJ had found the alien

---

[47] In the conclusion of its brief before the BIA, the government stated: "Based on the foregoing, the Service requests that the Board reverse the decision of the IJ and order that the respondent be removed from the United States to Nigeria."

[48] *Goonsuwan v. Ashcroft*, 252 F.3d 383, 386 (5th Cir. 2001); *see also Noriega-Lopez v. Ashcroft* 335 F.3d 874, 881 (9th Cir. 2003) (stating that "[t]he INS's contention that [the habeas petitioner] was obliged to file a motion to reopen or reconsider before seeking review of the BIA's order of removal is erroneous").

[49] James also alleges a due process violation, which we do not address because the BIA must remand.

[50] 335 F.3d at 882-85 (holding that the BIA lacks authority to enter orders of removal and is obligated to remand every case wherein it overturns the IJ's determination that an alien is not removable so that the IJ can issue the order of removal).

15

deportable but subsequently granted relief from removal.[51]  We held that, where the BIA reverses an IJ's grant of discretionary relief and gives effect to the IJ's original removal order, the BIA has merely effected the original removal order.  We explicitly distinguished *Reyes-Sanchez* from *Noriega-Lopez*, leaving open the question of whether the BIA may order removal when the IJ never ruled on deportability in the first instance.  Likewise, our opinion in *Delgado-Reyuna* depends on this same distinction.[52]

We now adopt the reasoning of the Ninth Circuit, as stated in section II B of *Noriega-Lopez*.  With the exception of a provision allowing the Attorney General to order certain aliens removed, the statutory framework of the INA conveys that only an IJ may enter an order of removal in the first instance:

> An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an

---

[51]  *Delgado-Reynua v. Gonzales*, 450 F.3d 596, 600 (5th Cir. 2006) (rejecting the Ninth Circuit's position in *Molina-Camacho v. Ashcroft*, 393 F.3d 937 (9th Cir. 2004), that the BIA cannot order removal even where an IJ determines than an alien is deportable but, thereafter, grants relief from removal); *Reyes-Sanchez v. Gonzales,* 160 Fed. Appx. 342, 344 (5th Cir. 2005) (unpublished) (stating "[u]nlike the IJ in *Noriega-Lopez*, the IJ here had already found [petitioner] removable").

[52]  The Eighth Circuit also reached the same conclusion, disagreeing with the Ninth Circuit in this related, yet distinct, situation. *Compare Molina-Camacho*, 393 F.3d at 937 *with Solano-Chicas v. Gonzales*, 440 F.3d 1050, 1054 (8th Cir. 2006) (holding that "where the BIA reverses the IJ's order granting cancellation of removal, the BIA, in essence, gives effect to the IJ's order of removability, for the BIA decision eliminates the impediments to removal").  The Eighth Circuit pointed to a recent amendment in the regulations which states that the BIA may issue a decision "affirming or granting to an alien an immigration status, relief or protection from removal, or other immigration benefit." *Solano-Chicas*, 440 F.3d at 1054 (citing 8 C.F.R. § 1003.1(d)(6)(i)).  This language, however, does not suggest that the BIA may order removal of an alien, tantamount to a denial of relief that has not been presented to an IJ, and does not alter our ultimate holding here.

16

alien.... Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be...removed from the United States.[53]

We reject James's contention that he was not convicted of an aggravated felony and remand the case to the BIA for further proceedings consistent with this opinion.

DISMISSED in part and REMANDED in part.

---

[53] *See* 8 U.S.C. § 1229a(a)(1)-(3).