[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11565
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 1, 2012
JOHN LEY
CLERK

Agency No. A099-672-349

EDWIN JOSE VELASQUEZ-OTERO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 1, 2012)

Before EDMONDSON, CARNES, and KRAVITCH, Circuit Judges.

PER CURIAM:

Edwin Jose Velasquez-Otero, proceeding pro se, seeks review of the Board of Immigration Appeals' final order, which vacated the Immigration Judge's grant of asylum and ordered Velasquez-Otero removed from the United States. He contends the BIA erred when it concluded he was not a member of a particular social group. He also contends the BIA violated his due process rights when it failed to remand his case to the IJ to determine whether he was eligible for withholding of removal or for relief under the United Nations Convention Against Torture (CAT).

I.

Velasquez-Otero was born in Honduras in 1990. In 2006, after refusing to join Honduran gangs following several beatings by gang members, Velasquez-Otero entered the United States without inspection. The Department of Homeland Security filed a Notice to Appear charging Velasquez-Otero with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Velasquez-Otero admitted the facts in the NTA and conceded removability. He then filed an application for asylum, withholding of removal, and CAT relief.

The government submitted to the IJ a 2006 State Department issue paper indicating that because of limited resources Honduran law enforcement faced a

2

major challenge from gangs but that combating gang activity was a high priority. It noted that gang violence was primarily an urban problem and that although gang recruitment focused on males between 13 and 20 years old, membership was overwhelmingly voluntary. Forced recruitment was rare outside of prison.

Velasquez-Otero argued that the IJ should grant him humanitarian asylum. He testified at his asylum hearing that he is afraid to go back to Honduras because of things he hears on the news. And he argued that his circumstances were extraordinary because if he were sent back there he would be homeless and without family support. The IJ agreed and found that Velasquez-Otero would be subject to targeting by gang members because he would be homeless and because the clothing and materials he had obtained by while he was in the United States would lead gang members to mistakenly believe him to be wealthy. The IJ distinguished Velasquez-Otero's case from Matter of E-A-G-, 31 I.&N. Dec. 591 (BIA 2008), based on lack of family support, found that he had established refugee status through credible testimony, and granted him asylum. The IJ did not, however, decide whether Velasquez-Otero was eligible for withholding of removal or CAT relief and gave no notice to Velasquez-Otero that he must reassert those claims if the government appealed.

On appeal to the BIA, the government argued that Velasquez-Otero had not

established that he was a refugee because he was not a member of a "particular social group" and it asked the BIA to order Velasquez-Otero removed. Velasquez-Otero argued that the IJ's decision to grant asylum was correct because he was a member of a particular social group that shared the common attributes of age, homelessness, and lack of wealth, and that social group was discrete, limited, clearly defined, and socially visible. He requested that the BIA affirm the IJ. Neither Velasquez-Otero nor the government addressed Velasquez-Otero's earlier request for withholding of removal or CAT relief.

The BIA sustained the government's appeal, vacated the IJ's decision, and ordered Velasquez-Otero removed. It concluded that the IJ's decision was contrary to controlling BIA precedents holding that people a gang attempts to recruit and people perceived as wealthy are not members of a particular social group. It also concluded that Velasquez-Otero's lack of family members remaining in Honduras was irrelevant. The BIA did not address Velasquez-Otero's earlier request for withholding of removal or CAT relief and did not remand the case to the IJ to determine those issues. This petition followed.

## II.

Velasquez-Otero contends the BIA erred when it reversed the IJ's decision granting him asylum. Because the BIA did not expressly adopt the IJ's decision,

4

we review only the BIA's decision.  See Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007).

"To the extent that the BIA's decision was based on a legal determination, review is de novo."  Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006).  Under de novo review, the BIA's interpretation of a statute it administers is entitled to the level of deference articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2278 (1984)." Castillo-Arias, 446 F.3d at 1195.  Therefore, we defer to the BIA unless its interpretation is arbitrary, capricious, or clearly contrary to law—i.e., unreasonable.  See Castillo-Arias, 446 F.3d at 1195; see also Chen v. U.S. Att'y Gen., 565 F.3d 805, 809 (11th Cir. 2009).  "The degree of deference given is especially great in the field of immigration."  Chen, 565 F.3d at 809.

The Attorney General or Secretary of Homeland Security has discretion to grant asylum if the alien meets the definition of "refugee."  8 U.S.C. § 1158(b)(1)(A).  A refugee is defined in relevant part as:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). A petitioner can prove refugee status by showing

either "past persecution on account of a statutorily protected ground" or "'a well-founded fear' of future persecution on account of a protected ground." Rivera v. U.S. Att'y Gen., 487 F.3d 815, 820–21 (11th Cir. 2007) (citing 8 C.F.R. § 208.13(b)).

Because Congress did not define "particular social group," we defer to the BIA's formulation from Matter of Acosta. Castillo-Arias, 446 F.3d at 1196; Matter of Acosta, 19 I.&N. Dec. 211, 233 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I.&N. Dec. 439 (BIA 1987). Under Acosta, a particular social group is made up of those who share

> a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience, such as former military leadership or land ownership. . . . However, whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

Acosta, 19 I.&N. Dec. at 233.

Velasquez-Otero argues that the BIA should have found that he is a part of particular social group, but he has not shown that he BIA's decision not to do so is unreasonable. The "particular social group" category is not a catch-all for people who allege persecution but do not fit into other protected groups. Castillo-Arias,

6

446 F.3d at 1198.  Social groups must have sufficient social visibility to be entitled to protection, see id. at 1198, and the BIA has declined to recognize social groups similar to the one Velasquez-Otero claimed to be in.  See, e.g., Matter of E-A-G-, 24 I.&N. 591, 591 (rejecting "persons resistant to gang membership" as a "particular social group"); Matter of S-E-G-, 24 I.&N. Dec. 579, 585 (BIA 2008) (rejecting "male children who lack stable families and meaningful adult protection, who are from middle and low income classes, who live in the territories controlled by the MS-13 gang, and who refuse recruitment" as a "particular social group"); In re A-M-E & J-G-U-, 24 I.&N. Dec. 69, 74–75 (BIA 2007)  (rejecting affluent Guatemalans as a "particular social group").  Therefore, the BIA's decision in this case was not arbitrary, capricious, or clearly contrary to law.  Accordingly, we defer to the its conclusion and deny Velasquez-Otero's petition for review of the denial of his asylum claim.

III.

Velasquez-Otero also contends the BIA violated his right to due process when it ordered him removed without remanding his petition to the IJ to determine whether he was eligible for withholding of removal or CAT relief.  The government argues that we lack jurisdiction over this claim and, alternatively, that Velasquez-Otero's due process claim fails.  We review de novo both jurisdictional

7

questions and constitutional claims. Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006).

We have jurisdiction to review an order of removal only if the alien has first exhausted his administrative remedies. 8 U.S.C. § 1252(d)(1); Avila v. U.S. Att'y Gen., 560 F.3d 1281, 1285. "[T]he exhaustion doctrine exists . . . to avoid premature interference with administrative processes," "to allow the agency to consider the relevant issues," to ensure the agency "has had a full opportunity to consider a petitioner's claims," and to allow the BIA to compile an adequate record for judicial review. Id. at 1250.

We have recognized, however, that "some due process claims do not require exhaustion." Avila, 560 F.3d at 1285. Other circuits have held that the exhaustion requirement does not apply in circumstances similar to those in this case. See James v. Gonzales, 464 F.3d 505, 512–513 (5th Cir. 2006) (holding that the exhaustion requirement does not apply when the government appeals an IJ's decision and the petitioner lacks adequate notice that failure to make claims before the BIA will result in forfeiture); Noreiga-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003) (holding that an alien habeas petition did not need to exhaust his claim that the BIA acted ultra vires by ordering him removed because, in part, "[t]here was no deliberate bypass of the administrative scheme"). Because

8

Velasquez-Otero did not receive adequate notice that failure to assert his request for withholding of removal or CAT relief to the BIA would result in forfeiture, and the record does not suggest any deliberate bypass of the administrative scheme, we conclude that the government has not established that Velasquez-Otero truly failed to exhaust his due process claim before the BIA. Therefore, we have jurisdiction.

"In order to establish a due process violation, an alien must show that he or she was deprived of liberty without due process of law, and that the asserted error caused him substantial prejudice." Avila, 560 F.3d at 1285. "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." Lapaiz v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010). Therefore, Velasquez-Otero must show that if the BIA had remanded his case to the IJ, the IJ would not have ordered him removed.

Velasquez-Otero, however, has failed to make that showing. "To qualify for withholding of removal or CAT relief, an alien must establish standards more stringent than those for asylum eligibility." Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007) Thus, an alien unable to meet the standard for asylum necessarily fails to meet the standard for withholding of removal. Id.

9

Further, "[t]o establish eligibility for CAT relief, an applicant must show that it is more likely than not that he will be tortured by, or with the acquiescence of, government officials if returned to the designated country of removal." Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1324 (11th Cir. 2010) (citing 8 C.F.R. § 208.16(c)(2)). Velasquez-Otero points to nothing in the record that suggests he will be subjected to torture by government officials or with their acquiescence if he is returned to Honduras.

Velasquez-Otero has therefore failed to show that "in the absence of the alleged violations, the outcome of the proceeding would have been different," which is required to show substantial prejudice, Lapaiz, 605 F.3d at 1143, and his due process claim fails for that reason.[1]

**PETITION DENIED.**

---

[1] Velasquez-Otero also suggests in his brief to this Court that he might be entitled to voluntary departure, but he specifically stated at his removal proceeding that he was not asking for voluntary departure as alternative relief.