# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 5, 2007**

Charles R. Fulbruge III
Clerk

No. 05-61092

SULTAN ALI HIMANI;
SHAHEEN HIMANI

Petitioners

v.

ALBERTO R GONZALES,
U S ATTORNEY GENERAL

Respondent

Petitions for Review of an Order of the Board of Immigration Appeals
A79 011 597

Before KING, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Sultan Ali Himani and Shaheen Himani petition for review of the Board of Immigration Appeals's affirmance of the Immigration Judge's denial of their applications for withholding of removal. For the reasons below, we deny the petitions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners Sultan Ali Himani ("Sultan") and Shaheen Himani ("Shaheen") are father and son, respectively, and natives and citizens of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Pakistan. Petitioners entered the United States on December 12, 2000, with authorization to stay for not more than six months. They remained in the country longer than authorized and voluntary appeared before immigration authorities for registration. They were ultimately charged with removal and appeared before an Immigration Judge ("IJ") in March 2003. They conceded removability but applied for withholding of removal.

Petitioners asserted that they were entitled to withholding of removal because of persecution based on membership in a particular social group and political opinion.[1] According to their application and testimony before the IJ, petitioners previously lived in Hyderabad, in the Sindh province of Pakistan. This province is historically home to the Sindhis, who speak the regional Sindhi language. Petitioners are Mohajirs, members of a group descended from Urdu-speaking Indians who migrated to Sindh in the mid-twentieth century. In the 1980s, Sultan joined a political party, the Mohajirs Quami Movement ("MQM"), that worked to protect the rights of Mohajirs. In 1989, Sultan was suspended from his job and ultimately discharged in what he believes was retaliation for his MQM activities.

In 1992 the MQM party split into two factions, which became known as the Muttahida and the Haqaqi. Sultan joined the Haqaqi faction. By this time he had moved to Karachi, and in 1993 he started a successful wholesale tobacco business that was located in a predominantly Muttahida area. Merchants in the area, including Sultan, paid protection money to persons associated with the Muttahida. In 1997 the Muttahida joined in a coalition with the national and Sindh governments; on this occasion the Sindh Rangers arrested hundreds of Haqaqi, including Sultan, who was held for five days but released unharmed.

---

[1] Shaheen also applied for relief under the Convention Against Torture, but the IJ determined that the requirements for relief under the Convention Against Torture had not been met. Shaheen has not pursued this issue on appeal, so we do not address it.

In 1998 an armed gang affiliated with the Muttahida attacked a Haqaqi meeting that Sultan was attending. Sultan was abducted, beaten, and left unconscious.

The next few years were relatively uneventful and prosperous, until, in November 2000, a prominent Muttahida leader approached Sultan and other area businessmen and demanded payments for the construction of a new hospital. Sultan refused to pay the demanded 100,000 rupees and informed a local police inspector. Three Muttahida members, who were upset that the police had been involved, confronted Sultan and raised the demand to 250,000 rupees. After Sultan again refused to pay, his son Shaheen was kidnapped and held for a 500,000 rupee ransom. Sultan paid the ransom and procured the release of Shaheen, who had been beaten and sexually abused. Sultan then filed a report with the local police, who indicated that they would arrest the kidnappers if Shaheen made a statement to the police about the crime. Sultan refused to bring his son to the police because the family was ashamed of the sexual abuse. In early December 2000, Sultan received a phone call stating that because he had gone to the police again, his daughter would also be kidnapped. At this Sultan sent his family to Hyderabad with his brother and made arrangements to wrap up his business in Karachi. Shortly thereafter he and Shaheen arrived in the United States, where they have remained pending the resolution of these proceedings.

The IJ denied petitioners' applications for withholding of removal. Petitioners also alleged a defect in the their appearance notices and moved for a continuance pending the resolution of a labor certification filed with the Department of Labor; both were denied by the IJ. On administrative appeal, the Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision denying withholding of removal. The BIA also ruled that the challenge based on the allegedly defective appearance notices and the motion for continuance were

properly denied.  Sultan and Shaheen now petition this court for review of the BIA's decision.

## II. STANDARD OF REVIEW

On a petition for review of a decision of the BIA, we review questions of law de novo and findings of fact for substantial evidence.  Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001).  Under the substantial evidence standard for factual findings, reversal is improper unless we decide "not only that the evidence supports a contrary conclusion, but also that the evidence compels it."  Zhao v. Gonzales, 404 F.3d 295, 306 (5th Cir. 2005) (internal quotations and citations omitted).  "The alien must prove that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion."  Id.

We generally have authority to review only the decision of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision.  Mikhael v. I.N.S., 115 F.3d 299, 302 (5th Cir. 1997).  Here, the BIA expressly adopted and affirmed the decision of the IJ denying withholding of removal, so we review the IJ's decision on that issue.  See id.; see also James v. Gonzales, 464 F.3d 505, 508 n.9 (5th Cir. 2006).

## III. DISCUSSION

Petitioners contend that the BIA and IJ erred by denying their applications for withholding of removal, and that the BIA erred by denying the challenge based on the appearance notices and the motion for a continuance.  We review each claim of error separately.

A.    Withholding of Removal

"To be eligible for withholding of removal, an applicant must demonstrate a 'clear probability' of persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion."  Chen v. Gonzales, 470 F.3d 1131, 1138 (5th Cir. 2006) (citations omitted).  The term "persecution" is not well-defined, but we have described it as the "infliction of suffering or

harm, under government sanction." Abdel-Masieh v. U.S. I.N.S., 73 F.3d 579, 583 (5th Cir. 1996) (internal quotations and citations omitted). A showing of "clear probability" is "equivalent to a showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds." Zhu v. Ashcroft, 382 F.3d 521, 529 n.6 (5th Cir. 2004) (internal quotations and citations omitted).

The IJ concluded that petitioners failed to carry their burden of proof on the issue of whether they would be persecuted on account of one of the specified grounds. The IJ recognized that petitioners had "set out some instances of pretty bad treatment," but determined that their "most serious problems were based upon direct extortion by the group, they really didn't appear to be interested in [Sultan's] political activities or nonpolitical activities." Petitioners point to three separate incidents that they claim amount to persecution on account of political opinion: (1) the 2000 extortion and kidnapping scheme; (2) the 1998 attack on the Haqaqi meeting; and (3) Sultan's 1997 arrest by the Sindh Rangers.

With regard to the extortion and kidnapping scheme, the IJ determined that it was motivated by the fact that Sultan was a successful businessman, and not by his political views. Petitioners argue that a prominent Muttahida leader carried out the extortion and kidnapping with the aid of two other party members, but this fact alone does not compel the conclusion that the scheme was motivated by political animus. In fact, substantial evidence supports the opposite conclusion: similar demands for money were also made of other businessmen in the area, and Sultan indicated that a relatively high amount was demanded of him because his business was more successful than others, not because of his political affiliation. But even if we were to assume that the extortion scheme was politically motivated, it would still fall short of persecution because petitioners have failed to show that it was sanctioned by the

government. The evidence by no means compels the conclusion that the extortionists bore the approval of the authorities: when Sultan reported the kidnapping, the local police were willing to make arrests but needed Shaheen to come to the station to file a complaint, which Sultan refused to allow because the family was ashamed of the sexual abuse. Sultan also testified that a local police inspector was well-known for taking action against extortionists like the ones here. Finally, the fact that the extortionists became upset when they learned that Sultan had notified the police indicates that they did not perceive their own actions to be sanctioned by the authorities.

The1998 attack on the Haqaqi meeting, in which Sultan and others were abducted and beaten by a group associated with the Muttahida, does not amount to persecution. A Seventh Circuit case, Meghani v. I.N.S., addressed similar facts: a member of one Pakistani political party was attacked by members of a rival faction, and the IJ found that the incident did not rise to the level of persecution. 236 F.3d 843, 844 (7th Cir. 2001). The Seventh Circuit noted that the alien had not shown that the attack was sanctioned by the government and agreed that the "incident was civil unrest between competing political factions not amounting to persecution." Id. at 847. Sultan similarly has not demonstrated that the attack here was sanctioned by authorities or more than the product of civil unrest. Based on the evidence, a reasonable factfinder would not be compelled to find persecution.

Finally, while Sultan's 1997 arrest by the Sindh Rangers appears to have been politically motivated, we can not say that it compels a finding of persecution. Sultan was detained for a relatively short period of time and was not physically abused or mistreated. He was never charged with or convicted of a crime, and after the arrest he remained in Karachi and continued to operate his business successfully for several more years. Absent evidence of serious physical abuse, a brief detention by authorities is generally insufficient to

support a finding of persecution, even if the detention was politically motivated. See, e.g., Zheng. v. U.S. Att'y Gen., 451 F.3d 1287, 1291 (11th Cir. 2006) (five-day detention of Chinese Falun Gong member did not establish persecution); Eusebio v. Ashcroft, 361 F.3d 1088, 1090–91 (8th Cir. 2004) (same for detention of Togo citizen who criticized military regime); Zalega v. I.N.S., 916 F.2d 1257, 1258–59 (7th Cir. 1990) (same for Polish citizen repeatedly detained and questioned because of connections to Solidarity movement); Mendez-Efrain v. I.N.S., 813 F.2d 279, 282–83 (9th Cir. 1987) (same for El Salvador national detained for four days by Salvadorian military).

In sum, we conclude that the IJ's decision that petitioners had failed to carry their burden of proof on the issue of whether they would be subject to persecution on one of the specified grounds is supported by substantial evidence. Denial of petitioners' applications for withholding of removal was therefore proper.

B.    Challenges to the Appearance Notices

Petitioners moved to terminated the removal proceedings on the theory that the appearance notices were not signed by an authorized official because they were signed by an interim district director. The BIA rejected this argument, and we agree that it is without merit. The regulations specify that certain "officers, or officers acting in such capacity, may issue a notice to appear." 8 C.F.R. § 239.1. The district director is one such officer, see id., and since an "interim district director" is an officer temporarily acting in the capacity of the district director, an interim district director is authorized to issue notices to appear. See Ali v. Gonzales, 435 F.3d 544, 546–47 (5th Cir. 2006) (rejecting argument that a notice signed on behalf of an acting assistant director was defective).

C.    Motion for Continuance to for Labor Certification

Petitioners also moved for a continuance of the removal proceedings pending an application for labor certification filed with the Department of Labor. The BIA decided that the IJ did not err in denying this motion, and we agree. Sultan now argues that the refusal to grant a continuance deprived him of due process rights. We find Ahmed v. Gonzales, 447 F.3d 433 (5th Cir. 2006), controlling. In Ahmed, the alien overstayed his visa and applied for a labor certification. Id. at 434. When removal charges were brought he moved for a continuance based on the pending labor certification but was denied; he then argued that the denial constituted a violation of due process. Id. at 435. We rejected this argument and noted that Ahmed "had incorrectly 'presuppose[d] . . . [that he has] a constitutionally protected right to actual discretionary relief from removal or to be eligible for such discretionary relief . . . .'" Id. at 440 (quoting Manzano-Garcia v. Gonzales, 413 F.3d 462, 471 (5th Cir. 2005) (per curiam)). Given our holding in Ahmed, the BIA did not err in denying the motion for a continuance.

## IV. CONCLUSION

For the reasons above, we deny the petitions for review.