DAVID BRIONES, SENIOR UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendant Juan Miguel Leon-Gonzalez's ("Mr. Leon-Gonzalez") "Motion to Dismiss Indictment" ("Motion"), filed in the above-captioned case on October 16, 2018. On October 29, 2018, the United States of America ("the Government") filed its "Response in Opposition to Defendant's Motion to Dismiss Indictment" ("Response"). On November 5, 2018, Mr. Leon-Gonzalez filed his "Reply to Government's Response in Opposition to Defendant's Motion to Dismiss Indictment" ("Reply"). On November 7, 2018, Mr. Leon-Gonzalez filed an "Advisory to the Court." On November 8, 2018, the Government filed its "Surreply to Defendant's Reply to Government's Response in Opposition to Defendant's Motion to Dismiss Indictment" ("Surreply"). On November 14, 2018, Mr. Leon-Gonzalez filed a second "Advisory to the Court." On November 19, 2018, the Government filed a "Notice of Supplemental Authority" ("Supplement"). After due consideration, the Court is of the opinion that Mr. Leon-Gonzalez's Motion should be granted.
BACKGROUND
On September 5, 2018, a Grand Jury sitting in the Western District of Texas returned a single count Indictment ("Indictment"), which charges Mr. Leon-Gonzalez with an alleged illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). Indictment, United States of America v. Juan Miguel Leon-Gonzalez , (W.D. Tex., Sept. 5, 2018), ECF No. 10. Specifically, the Indictment alleges that on or about August 12, 2018, Mr. Leon-Gonzalez, an undocumented immigrant who had previously been excluded, deported, and removed from the United States on or about February 13, 2015, attempted to enter, entered, and was found in the United States without having previously received express consent to reapply for admission from the United States Attorney General or the Secretary of Homeland Security. Id.
Mr. Leon-Gonzalez's immigration history indicates that he was first encountered after he was convicted of felony child abuse in violation of New Mexico law and sentenced to three years in prison. Resp., ECF No. 24, at 1. On November 21, 2011 the Department of Homeland Security served a Notice to Appear on the defendant that alleged he was subject to removal from the United States for being a noncitizen present in the United States without being admitted or paroled. Id. at Ex. A. The Notice to Appear stated that Mr. Leon-Gonzalez was to appear before a United States Department of Justice immigration judge at the El Paso Service Processing Center and included the address of the Center. Id. But it did not indicate the date and time of that hearing. Id. Instead, the Notice to Appear indicated that the hearing would be on "a date to be set" and "a time to be set." Id. The Department of *1028 Homeland Security filed the Notice to Appear with the immigration court in El Paso, Texas. Resp., ECF No. 24, at 2.
The immigration court issued a Notice of Hearing to Mr. Leon-Gonzalez. Id. at 2 n.3 (explaining that "[i]mmigration officials have represented to the U.S. Attorney's Office that this Notice of Hearing was served on the alien. Because the alien was detained, however, a copy of the Notice of Hearing was maintained in the Executive Office of Immigration Review record of proceedings, as opposed to the alien's A-File. The government is in the process of obtaining a copy of this notice and will provide it to defense counsel and the Court upon receipt." The Court notes that no such Notice of Hearing has been provided yet.). Mr. Leon-Gonzalez attended the hearing held before the immigration court on December 12, 2011, and Immigration Judge Thomas C. Roepke issued an order of removal. Id. at Ex. B. Mr. Leon-Gonzalez waived appeal and he was taken to Mexico on December 13, 2011. Id. at 2.
That 2011 removal order is the underlying removal order of the instant Indictment. Mot., ECF No. 20, at 2; see Indictment, ECF No. 10. The Indictment charges illegal reentry in violation of 8 U.S.C. § 1326 and was filed against him on September 5, 2018 after immigration authorities found Mr. Leon-Gonzalez in El Paso on August 12, 2018. Mot., ECF No. 20, at 2; Indictment, ECF No. 10. Mr. Leon-Gonzalez's Motion seeks to dismiss the Indictment.
ANALYSIS
Mr. Leon-Gonzalez petitioned the Court to dismiss the Indictment because the immigration court lacked subject matter jurisdiction to issue the original removal order after the Notice to Appear he received in 2008 failed to include a date and time. Mot., ECF No. 20, at 1-2. Because the immigration court lacked jurisdiction to order his removal, he argues that the removal was void and cannot form the basis for an indictment for illegal reentry as he was never "removed" as a matter of law. Id. at 1. In addition, Mr. Leon-Gonzalez argues that the removal did not comport with due process and that he satisfies the § 1326(d) factors for a collateral attack. Id.
First, the Government argues that Mr. Leon-Gonzalez cannot meet any of the three § 1326(d) factors and asserts that "a Defendant may not collaterally attack the validity of a prior removal without meeting his burden of satisfying § 1326(d)." Resp., ECF No. 24, at 3-4. Second, the Government's Response takes issue with the definition of a Notice to Appear in § 1229(a)(1), as opposed to the regulatory definition in 8 C.F.R. § 1003.15, which does not require a date and time to be in a Notice to Appear. Id. at 7. Third, the Government argues that the "lawfulness or validity of a prior removal order is not an element of a § 1326 offense." Id. at 3.
The Court agrees with Mr. Leon-Gonzalez that regardless of whether the § 1326(d) factors are met, no jurisdiction existed in the trial court and therefore his Motion shall be granted because there is no initial "removal" to form the predicate for a charge of illegal reentry.
1. Regardless of the § 1326(d) Factors, a Removal Order May Be Challenged for Lack of Subject Matter Jurisdiction.
Typically, an undocumented immigrant must meet all three requirements of 8 U.S.C. § 1326(d) to collaterally attack the validity of a removal order. These three requirements are (1) the alien must have exhausted any administrative remedies, (2) the proceedings at which the order was issued must have improperly deprived the *1029 alien of the opportunity for judicial review, and (3) the entry of the deportation order must have been fundamentally unfair. 8 U.S.C. § 1326(d)(1-3).
But Mr. Leon-Gonzalez's challenge is atypical. United States v. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491, at *2, 2018 U.S. Dist. LEXIS 187870, at *4 (W.D. Tex. Nov. 2, 2018). He contends that because the Government failed to file an effective Notice to Appear, the immigration judge never had jurisdiction to commence removal proceedings against him. Mot., ECF No. 20, at 2-3. And because the immigration judge never had jurisdiction over his removal proceedings, the resulting removal order was void. Id.
First, the removal order against Mr. Leon-Gonzalez is an "order from which an appeal lies," which means it is a judgment. See 8 C.F.R. § 1003.38(a) ("Decisions of Immigration Judges may be appealed to the Board of Immigration Appeals ..."); FED. R. CIV. PRO. 54(a). Second, "any judgment may be collaterally attacked if it is void for lack of jurisdiction," despite § 1326(d)'s restrictions on the types of collateral attacks that may be made on a deportation order. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *2, 2018 U.S. Dist. LEXIS 187870 at *4 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 3 (citing Jacuzzi v. Pimienta , 762 F.3d 419, 420 (5th Cir. 2014) (emphasis in original) ); see e.g. In re Reitnauer , 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack.").
The Government argues that Jacuzzi v. Pimienta does not control here because it does not create a different mechanism for collateral attack and was decided based on a lack of personal jurisdiction. Surreply, ECF No. 29, at 5. Similarly, the Government asserts that In re Reitnauer does not "create a separate mechanism for aliens to collaterally attack the jurisdictional validity of their prior removal orders outside § 1326(d)." Id. In support of its position that § 1326(d) provides the "exclusive mechanism" to challenge the validity of a removal order, the Government cites the text of the statute itself to show Congress's will: " 'in a criminal proceeding under this section, an alien may not challenge the validity of the deportation order' unless he demonstrates the three requirements." Id. (quoting § 1326(d) ).
Next the Government asserts that even if Jacuzzi and In re Reitnauer applied, the Supreme Court has held in Chicot County Drainage District v. Baxter State Bank and Travelers Indemnity Co. v. Bailey that "a party-like the defendant-who never contested a court's subject matter jurisdiction in the original court is not permitted to then mount a collateral attack of that jurisdiction in a subsequent litigation." Id. at 6 (citing Chicot County Drainage Dist. v. Baxter State Bank , 308 U.S. 371, 376-77, 60 S.Ct. 317, 84 L.Ed. 329 (1940) ; Travelers Indemnity v. Bailey , 557 U.S. 137, 152-53, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009) ).
However, in addition to Jacuzzi and In re Reitnauer , the Fifth Circuit has specifically held that when the Board of Immigration Appeals issues a removal order without statutory or regulatory authority the order is rendered "a legal nullity." James v. Gonzales , 464 F.3d 505, 513 (5th Cir. 2006) (adopting the reasoning in Noriega-Lopez v. Ashcroft , 335 F.3d 874, 884-85 (9th Cir. 2003) ); see also Da Silva v. Kinsho Intern. Corp. , 229 F.3d 358, 362 (2d Cir. 2000) (holding that a judgment rendered by a court lacking subject-matter jurisdiction "is subject to collateral attack *1030 as void."); Republic of Ecuador v. Connor , 708 F.3d 651, 655 n.6 (5th Cir. 2013) (citing the rule in Da Silva and explaining that if previously obtained discovery orders were issued by courts lacking subject matter jurisdiction, those orders "might well be void"); Puc-Ruiz v. Holder , 629 F.3d 771, 782 (8th Cir. 2010).
Chicot County is distinguishable where the Supreme Court ruled that the bankruptcy court's finding of subject matter jurisdiction based on diversity was final and could not be subsequently attacked in an entirely separate collection action. In re Acorn Hotels, LLC , 251 B.R. 696, 700 (Bankr. W.D. Tex. 2000) (citing Chicot County , 308 U.S. at 375, 60 S.Ct. 317 ). Instead, res judicata could and did attach to the judgment, even though that judgment would have been vulnerable on direct appeal as void for lack of subject matter jurisdiction. Here the Government makes no attempt to argue all four prongs necessary to sustain a res judicata argument. See generally Resp., ECF No. 24; Surreply, ECF No. 29. Nor could they as one prong is clearly unmet: the immigration court was not a "court of competent jurisdiction" as it did not meet the clear and unambiguous directions from Congress vesting it with jurisdiction. Comer v. Murphy Oil USA, Inc. , 718 F.3d 460, 467 (5th Cir. 2013) (quoting Test Masters Educ. Servs., Inc. v. Singh , 428 F.3d 559, 571 (5th Cir. 2005) ; see infra 1030-31, 1032-33. Travelers Indemnity is distinguishable for the same reasons. See 557 U.S. at 152, 129 S.Ct. 2195.
Because Mr. Leon-Gonzalez's removal order was a legal nullity, there was no legitimate order from which Mr. Leon-Gonzalez could perfect an appeal. James v. Gonzales , 464 F.3d at 513 (adopting the reasoning in Noriega-Lopez v. Ashcroft , 335 F.3d at 884-85 ). As a result, Mr. Leon-Gonzalez need not satisfy section 1326(d)'s strict requirements because the immigration judge lacked jurisdiction from the outset.[1] Compare United States v. Santos Larios-Ajualat , No. 18-10076-JWB, 2018 U.S. Dist. LEXIS 176649, 2018 WL 5013522, at *6 (D. Kan. Oct. 15, 2018) (finding that defendant could not collaterally challenge a deportation order unless he met each of § 1326(d)'s requirements), with Ortiz , No. 18-CR-00071-RWG, 347 F.Supp.3d at 406-07, 2018 WL 6012390, at *3-4, 2018 U.S. Dist. LEXIS 190986, at *9 (finding that defendant could collaterally challenge a deportation order without meeting each of § 1326(d)'s requirements).
2. A Valid Notice to Appear Must Include the Date and Time to Vest Jurisdiction in the Immigration Court.
According to the Supreme Court's recent opinion in Pereira v. Sessions , as well as a holistic analysis of both the regulatory and statutory definitions of a Notice to Appear, the incomplete Notice to Appear did not vest jurisdiction and therefore Mr. Leon-Gonzalez's underlying removal was void and his indictment for illegal re-entry should be dismissed. A later-sent Notice of Hearing with a date and time does not vest an immigration court with subject matter jurisdiction and complaint about this cannot be waived.
*1031 a. Pereira Applies to a Notice to Appear Outside of the Stop-Time Rule Context, Including a Notice to Appear that Functions as a Charging Document.
This Court agrees with the Government regarding the fact that regulations outline how jurisdiction vests in an immigration court, but the Court disagrees that there are different Notices to Appear that serve different purposes and therefore can have varied contents. And the Court disagrees with the Government's assertion that the Attorney General's "regulatory framework is unquestionably permissible and entitled to deference on review." Resp., ECF No. 24, at 8; see infra 1031-32 (discussing inapplicability of Chevron deference to this case). The only action appropriate for the Court is to dismiss where Congress's unambiguous intent is clear and the Supreme Court has confirmed that a Notice to Appear must include the date and time of a removal hearing in order to function as a charging document.
The Executive Office of Immigration Review, which encompasses immigration courts, is part of the Department of Justice. About the Office , EXECUTIVE OFFICE FOR IMMIGRATION REVIEW (Sept. 20, 2018, 10:37 AM), https://www.justice.gov/eoir/about-office. As such, Congress has said that the Executive Office of Immigration Review is "subject to the direction and regulation of the Attorney General," 6 U.S.C. § 521(a) (2018), including regulations promulgated by the Attorney General. 8 U.S.C. § 1103(g)(2) (2018). Current Attorney General issued regulations delimit the jurisdiction of immigration courts, providing that "[j]urisdiction vests ... when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a) (2018) (emphasis added). A "charging document" is the "written instrument which initiates a proceeding before an Immigration Judge ... includ[ing][2] a Notice to Appear." 8 C.F.R. § 1003.13 (2013) ; see also Martinez-Garcia v. Ashcroft , 366 F.3d 732, 735 (9th Cir. 2004) ("The only charging document available after April 1, 1997, is the Notice to Appear.") (citing 8 C.F.R. § 1003.13 ).[3]
A Notice to Appear must include the time and date of the hearing as required by 8 U.S.C. § 1229(a) :
In removal proceedings under section 1229(a) of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following: ...
(G)(i) The time and place at which the proceedings will be held.
(ii) The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.
8 U.S.C. § 1229 (West) (emphasis added).
The Supreme Court recently examined this statute in the context of an immigration mechanism known as the "stop time rule." Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 2113-14, 201 L.Ed.2d 433 (2018). The Supreme Court concluded that, "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).' " Id. The Supreme Court explained that "[i]f the three words *1032 'notice to appear' mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, i.e., the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place." Id. at 2115. The Court further noted that the failure to specify "integral information like the time and place of removal proceedings" deprived the Notice to Appear of "its essential character," ids="12612847" index="65" url="https://cite.case.law/s-ct/138/2105/#p2113">id. at 2116-17, and that time-and-place information was no less crucial in a Notice to Appear than information explaining the charges the alien faced, ids="12612847" index="66" url="https://cite.case.law/s-ct/138/2105/#p2113">id. at 2115 n.7, "for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." Id. at 2115.
The petitioner in Pereira was a nonpermanent resident who was first admitted to the United States in 2000. Id. at 2112. In 2006, Pereira was served in person with a Notice to Appear, informing him that removal proceedings were being initiated against him and stating that such proceedings would commence on a date "to be set" and at a time "to be set." Id. Pereira failed to appear and was ordered removed in absentia by the immigration court. Id. Despite this removal order, it does not appear that Pereira was ever actually deported from the United States. Id.
In 2013, after he had been in the country for more than ten years, Pereira was again detained by immigration authorities, and removal proceedings were reopened against him. Id. Pereira sought to have his removal cancelled, arguing the stop-time rule was not triggered by the 2006 Notice to Appear because the Notice to Appear had failed to include information about the time and date of his removal hearing as required by § 1229(a). Id. The immigration court, finding the law "quite settled," determined that this omission did not render the Notice to Appear defective and that the stop-time rule applied to Pereira. Id. The Board of Immigration Appeals and the First Circuit affirmed this decision. Id.
The Supreme Court reversed, holding that "[t]he plain text, the statutory context, and common sense all lead inescapably and unambiguously" to the conclusion that a Notice to Appear that omits time-and-place information is not a Notice to Appear under § 1229 and thus cannot trigger the stop-time rule. Id. at 2110. Referring to the doctrine espoused in Chevron U.S.A., Inc. v. Nat. Res. Def Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court accorded no deference to the immigration court's determination of whether time-and-place information must be included in a Notice to Appear because Congress had "supplied a clear and unambiguous answer" to the question. Pereira , 138 S.Ct. at 2113-14.
Per Pereira , a document is not a Notice to Appear under section 1229(a) if it does not inform a noncitizen when and where to appear for removal proceedings. Id. at 2110. And if it is not a valid Notice to Appear then it cannot be a valid charging document. See 8 C.F.R. § 1003.13 (2013). And, without a valid charging document, jurisdiction never vests in the immigration court. 8 C.F.R. § 1003.14(a) (2018) ; DeLeon-Holguin v. Ashcroft , 253 F.3d 811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when the INS[4] files the appropriate charging document with the immigration court."). Any action by an immigration court absent jurisdiction is an ultra vires or extra-judicial act, as it exceeds *1033 the court's Congressionally-delegated power. See ids="1269230" index="85" url="https://cite.case.law/f3d/253/811/#p815">id. ; see also Arbaugh v. Y & H Corporation , 546 U.S. 500, 511, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).
In contrast to the Government's suggestion that different contents are required in a Notice to Appear depending on the context of the Notice to Appear, there is no indication in Pereira that a Notice to Appear must include the date and time of the removal hearing only in the context of the stop-time rule. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *4, 2018 U.S. Dist. LEXIS 187870 at *11 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 8. Indeed, Pereira does not say that a putative Notice to Appear that omits the time and place of a removal hearing fails to trigger the stop-time rule-it says that such a document is not a Notice to Appear at all . See Pereira , 138 S.Ct. at 2115 ("Conveying such time-and-place information to a noncitizen is an essential function of a Notice to Appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings."); id. at 2116-17 ("Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive the Notice to Appear of its essential character.") (quotes and citations omitted). The date and time go to the essence of a Notice to Appear. See ids="12612847" index="94" url="https://cite.case.law/s-ct/138/2105/#p2113">id.
Moreover, the conclusion that time-and-place information must always be included in a Notice to Appear is supported by other provisions in the statute. The statutory language allowing the Government to change or postpone the removal proceedings to a new time or place "presumes that the Government has already served a 'notice to appear' ... that specified a time and place as required by § 1229(a)(1)(G)(i)." Id. at 2114 ; see also id. at 2114-15 (applying the time-and-place requirement to statutory provision detailing an alien's securing of counsel). "[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." Id. at 2116. Three canons of construction clearly support the conclusion that all Notices to Appear require a date and time.
Next, the Government argues that the Supreme Court's decision in Pereira to remand the case instead of concluding the immigration court lacked jurisdiction demonstrates that the Supreme Court did not consider a deficient Notice to Appear to be incapable of vesting jurisdiction in the immigration court. Resp., ECF No. 24, at 12-13. But the Supreme Court had no reason to consider the jurisdiction of the immigration court in Pereira's removal proceedings. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *7, 2018 U.S. Dist. LEXIS 187870 at *19 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 13. The Notice to Appear at issue in Pereira was significant because it was unclear whether it triggered the stop-time rule, which had nothing to do with the whether the immigration court had jurisdiction. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *7, 2018 U.S. Dist. LEXIS 187870 at *19 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 13. Furthermore, even if the Supreme Court had determined that the immigration court lacked jurisdiction for the removal proceedings initiated by the 2006 Notice to Appear, such a determination would have done nothing for Pereira because he would *1034 still have been required to show that the stop-time rule was not triggered by the defective Notice to Appear. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *7, 2018 U.S. Dist. LEXIS 187870 at *19 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 14. The Court is thus unpersuaded that the holding in Pereira contradicts § 1003.14's plain text requiring a proper Notice to Appear for jurisdiction to vest in the immigration court. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *7, 2018 U.S. Dist. LEXIS 187870 at *20 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 14.
Finally, the Government asserts that a recent Fifth Circuit opinion supports its view that Pereira should be read narrowly, so that its holding regarding the contents of a Notice to Appear is confined to the context of the stop-time rule. Supplement, ECF No. 31, at 1. The Government cites Mauricio-Benitez v. Sessions to support its argument. 908 F.3d 144 (5th Cir. 2018). However, for at least two reasons this case is inapposite.
First, Mauricio-Benitez raised an issue of personal jurisdiction and due process because of Mr. Mauricio-Benitez's failure to timely correct a spelling error in his mailing address. Id. at 147-48, at *2-3, 2018 U.S. App. LEXIS 31718 at *5-6. The Notice to Appear was sent to the wrong address, so Mr. Mauricio-Benitez never received actual notice and was removed in absentia. Id. at 146-47, at *1-2, 2018 U.S. App. LEXIS 31718 at *3. Years later, he appeals after the Board of Immigration Appeals denied reopening his removal. Id. at 146-47, at *1-2, 2018 U.S. App. LEXIS 31718 at *3-4. This stands in stark contrast to the subject matter jurisdiction issue that Mr. Leon-Gonzalez raises here and the different procedural posture of his Motion to Dismiss as opposed to an appeal of a denial to reopen.
Second, the Fifth Circuit does favorably reference two district court cases that declined to apply Pereira to cases with the same issue as Mr. Leon-Gonzalez's (a Notice to Appear without a date or time). Id. at 148-49, n.1, at *3-4, n.1, 2018 U.S. App. LEXIS 31718 at *9, n.1. However, it does so to support its conclusion that cancellation and reopening involve different standards of review and therefore the reopening at issue in Mauricio-Benitez could not be resolved by reference to Pereira 's conclusions in the context of a cancellation. Id. This again stands in stark contrast to the procedural posture of this case, which involves no deference to or specific standard of review of a Board of Immigration Appeals decision, rather it is a Motion to Dismiss for lack of subject matter jurisdiction.
b. The Statutory Definition Controls Over the Regulatory Definition Upon Which the Government Relies.
The Court next considers whether a Notice to Appear must include time-and-place information to serve as a proper charging document sufficient to vest the immigration judge with jurisdiction. This analysis is complicated by the fact that necessary components of a Notice to Appear are provided in two different places. Department of Justice regulation 8 C.F.R. § 1003.15(b) lists the information that must be included in every Notice to Appear, such as "the nature of the proceedings against the alien" and "the legal authority under which the proceedings are conducted." Id. § 1003.15(b). This regulation does not require the Notice to Appear to specify the date and time of the noncitizen's *1035 removal hearing. See id. But in 8 U.S.C. § 1229, Congress listed the necessary components of a Notice to Appear, including the "time and place at which the [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i).
The Government argues that because the regulations govern when jurisdiction vests in the immigration court,[5] the regulatory requirements for a Notice to Appear should control. Resp., ECF No. 24, at 6. Because the regulatory requirements should control, a Notice to Appear need not include time-and-place information to vest the immigration court with jurisdiction. See itation index="122" url="https://cite.case.law/citations/?q=8%20U.S.C.%20%C2%A7%201229">id. 7-8.
This argument is based on an incomplete reading of both the applicable regulations and the Pereira decision. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *5, 2018 U.S. Dist. LEXIS 187870 at *13 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 9. The Government's reading of 8 C.F.R. § 1003.15(b) is incomplete because it ignores 8 C.F.R. § 1003.18, which states that immigration authorities "shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." Id. Thus, a full reading of the regulatory definition is that a Notice to Appear must always include the information contained in § 1003.15 and must include the time, place, and date of removal hearing where practicable per § 1003.18. Id.
The bigger problem for the Government is that the regulatory definition given above was expressly rejected by Pereira when the Supreme Court held that Notices to Appear must include information specifying the time and place of removal proceedings in all circumstances, not merely where the inclusion of such information was "practicable." Id. ; see Pereira , 138 S.Ct. at 2111-13 ; see also Br. for Resp't, Pereira v. Sessions , 138 S.Ct. 2105, at 49 (relying on the "where practicable" language to argue that Notices to Appear did not need to include information about the time and place of removal hearings in order to trigger the stop-time rule). Indeed, the Supreme Court in Pereira acknowledged that the Board of Immigration Appeals had previously ruled that the stop-time rule could be triggered by a Notice to Appear that did not include the date and time of the removal proceedings because the regulations required this information only "where practicable." Pereira , 138 S.Ct. at 2111-12 (citing Matter of Camarillo , 25 I. & N. Dec. 644 (2011) ). But because this ruling found "little support in the statute's text," id. at 2120 (Kennedy, J., concurring), the Supreme Court rejected it. The Government's position is thus directly contradicted by Pereira 's holding that, regulatory language notwithstanding, a Notice to Appear must always include the time and place of removal proceedings.
Moreover, a regulation that would give effect to a Notice to Appear that does not include the time and place of removal proceedings would be contrary to the clear and unambiguous intent of Congress. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *5, 2018 U.S. Dist. LEXIS 187870 at *14 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 10. When reviewing an agency's construction of the statute it administers, a court is "confronted *1036 with two questions. First, always, is the question whether Congress has spoken directly to the issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *5, 2018 U.S. Dist. LEXIS 187870 at *15 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 10-11 (both cases quoting Chevron , 467 U.S. at 842-43, 104 S.Ct. 2778 ). Thus, if Congress clearly and unambiguously intended for a Notice to Appear to always include time-and-place information, the regulations may not give effect to a Notice to Appear that fails to include this information. Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *5, 2018 U.S. Dist. LEXIS 187870 at *15 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 11.
Because the Government's demand for judicial deference is wrong under Chevron , its demand raises constitutional concerns. See Resp., ECF No. 24, at 6; Voices for Int'l Bus. & Educ., Inc. v. NLRB , 905 F.3d 770, 779-80, 2018 WL 4520058, *7, 2018 U.S. App. LEXIS 27153, *20-21 (5th Cir. 2018) (Ho, J., concurring). Congress has the power to make laws, and courts have the power to interpret them. Voices , 905 F.3d at 779-80, 2018 WL 4520058 at *7, 2018 U.S. App. LEXIS 27153 at *21. And the separation of these respective powers from one another, and from the Executive, is an essential principle of our Founding vision. Id. ; see, e.g. , Bond v. United States , 564 U.S. 211, 222, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011) ("Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well.").
As Justice Alito has recently reminded, of course, Chevron remains binding Supreme Court precedent. Voices , 905 F.3d at 779-80, 2018 WL 4520058 at *7, 2018 U.S. App. LEXIS 27153 at *21 (citing Pereira , 138 S.Ct. at 2129 (Alito, J., dissenting) ). But it nevertheless remains the duty of every court to apply Chevron correctly. Voices , 905 F.3d at 779-80, 2018 WL 4520058 at *7, 2018 U.S. App. LEXIS 27153 at *21. Under Chevron , we do not owe every agency's interpretation our "reflexive deference." Id. (citing Pereira , 138 S.Ct. at 2120 (Kennedy, J., concurring) ). Courts "need not resort to Chevron deference" when "Congress has supplied a clear and unambiguous answer to the interpretive question at hand." Id. at 780 (quoting Pereira , 138 S.Ct. at 2113 ). And that is particularly so when we are considering the boundaries of agency authority, as we are here. Resp., ECF No. 24, at 8; id. at 779-81, at *7-8, 2018 U.S. App. LEXIS 27153 at *22 (citing City of Arlington v. FCC , 569 U.S. 290, 307, 133 S.Ct. 1863, 185 L.Ed.2d 941 (2013) ("The fox-in-the-henhouse syndrome is to be avoided ... by taking seriously, and applying rigorously, in all cases, statutory limits on agencies' authority.").
Finding ambiguity where it does not exist-granting deference where it is not warranted-does not simply result in a nominal misallocation of power between different branches of government. Voices , 905 F.3d at 779-81, 2018 WL 4520058 at *7-8, 2018 U.S. App. LEXIS 27153 at *22-23. It means that policymaking is no longer undertaken where it is most accountable to the people. Id. at 780-81, at *8, 2018 U.S. App. LEXIS 27153 at *23. Congress has spoken clearly here: in order to be a *1037 Notice to Appear, the document must include a date and time. See 8 U.S.C. § 1229(a)(1)(G)(i).
This Court concludes that Congress unambiguously intended for Notices to Appear to always include the time and place of removal hearings-the contents of a Notice to Appear does not vary depending on its purpose as the Government suggests. See Resp., ECF No. 11-12; Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491, at *5-6, 2018 U.S. Dist. LEXIS 187870 at *15 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 11. Three facts compel this conclusion. The first is the Supreme Court's determination in Pereira that § 1003.18's requirement that time-and-place information be included only "where practicable" was contrary to Congress's intent. See supra 1031-33. It is illogical to suppose that a regulation requiring a Notice to Appear to include time-and-place information "where practicable" is contrary to Congressional intent while a regulation that would never require Notices to Appear to include this information is not. Id. The second is that it would be "contradictory and absurd" for Congress to require a Notice to Appear to always include some of the information in § 1229(a) but not the date and time of the removal hearings. Id. ; Pereira , 138 S.Ct. at 2115 (citations and quotations omitted). The third is that the document defined in the regulations is the same document as that defined in the statute: both refer to the start of removal proceedings, the definitions are almost identical, and both refer to the Notice to Appear's function as a "charging document." See supra 1031-33; see Pereira , 138 S.Ct. at 2128 (Alito, J., dissenting) (noting that a Notice to Appear under § 1229(a)"serve[s] primarily as a charging document" and that this characterization is reinforced by the requirements in § 1229(a)(1) ).
Moreover, as noted by Pereira , there is no reason why the function of a Notice to Appear should affect the information that it must include. See supra 1031-33; see Pereira , 138 S.Ct. at 2115 n.7. This Court thus concludes that Congress unambiguously intended for Notices to Appear to always include information specifying the time and place of removal proceedings. Resp., ECF No. 11-12; Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *5-6, 2018 U.S. Dist. LEXIS 187870 at *15 ; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 12. Therefore, any regulation that conflicts with this unambiguous intent may not be given effect. Mr. Leon-Gonzalez's Notice to Appear was not a Notice to Appear because it lacked a date and time. Therefore, the immigration court lacked jurisdiction to lawfully remove Mr. Leon-Gonzalez and the instant indictment fails for its reliance on this void removal.
c. A Notice of Hearing Does Not Cure a Void Notice to Appear.
The Supreme Court rejected the same argument the Government advances here-that the Notice to Appear met the statutory requirements because the immigration court complied with immigration regulations by providing a later Notice of Hearing with the date and time specified. See Pereira , 138 S.Ct. at 2113 ; Br. for Resp't, Pereira v. Sessions , No. 17-459, 2018 WL 1557067, at *30, *49 (Mar. 23, 2018) ; Govt's Resp., ECF No. 24, at 13. When Congress defined a Notice to Appear in 1996, the Department of Justice then tried to circumvent this specific statutory requirement by promulgating a regulation stating that the hearing time need only be included "where practicable."
*1038 8 C.F.R. § 1003.18(b). If not included in the notice, the immigration court-per the regulation-could later notify the noncitizen of the hearing time. § 1003.18(b). The Supreme Court was not persuaded that this two-step process was sufficient, even though the Department of Homeland Security, relying on the regulation's "where practicable" language, "almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings[.]" Pereira , 138 S.Ct. at 2111.
Furthermore, the regulations make plain that a charging document is that which initiates proceedings. See 8 C.F.R. § 1003.13. Yet, the document served on Mr. Leon-Gonzalez did not meet the requirements of a Notice to Appear and therefore could not act as the "charging document" needed to confer jurisdiction on the immigration judge. Both here and elsewhere, it is the Notice to Appear, not a Notice of Hearing that initiates removal proceedings. 8 C.F.R. § 1003.13 ; see also Ortiz , No. 18-CR-00071-RWG, 347 F.Supp.3d at 405-06, 2018 WL 6012390, at *2, 2018 U.S. Dist. LEXIS 190986, at *6, citing Haider v. Gonzales , 438 F.3d 902, 907 (8th Cir. 2006) (stating that "the [Notice to Appear] and the [Notice of Hearing] ... combined to provide [ ] requisite notice" but it was the "[Notice to Appear] [that] initiated removal proceedings ..." (emphasis added) ).
d. The Immigration Court's Subject Matter Jurisdiction Cannot Be Waived.
The Government argues that any complaint has been waived because Mr. Leon-Gonzalez appeared for his hearing and failed to raise the issue with his Notice to Appear before the immigration court or Board of Immigration Appeals. The Fifth Circuit has held that "an alien can forfeit a challenge to the subject matter jurisdiction of the immigration court." Resp., ECF No. 23, at 9; see Sohani v. Gonzales , 191 Fed. App'x 258, 259 (5th Cir. 2006) ("Because Sohani did not object to the admission of the Notice to Appear [lacking time and date] and conceded his removability at the removal hearing, Sohani has waived his challenge to the IJ's jurisdiction over the removal proceedings"); see also Chambers v. Mukasey , 520 F.3d 445, 449-50 (5th Cir. 2008) (noting that Defendant "waived any challenge to the NTA [Notice to Appear] by appearing at her initial hearing, and pleading to the charges contained in the NTA [Notice to Appear].").
First, the Government's reliance on Chambers v. Mukaskey and Sohani v. Gonzales is misplaced. Chambers dealt only with the issue of defective notice, not a lack of jurisdiction, and it is thus not controlling in this context. The Chambers court concluded that Petitioner's Notice to Appear was not defective because it satisfied the substantive requirements of 8 U.S.C. § 1229(a)(1). Chambers , 520 F.3d at 449. And Petitioner did not dispute that the Notice to Appear was properly filed with the immigration court. See ids="3703617" index="196" url="https://cite.case.law/f3d/520/445/#p449">id. at 449-50 ; see also 8 C.F.R. §§ 1003.13, 1003.14(b). Instead, Petitioner argued that the Notice to Appear was improperly served because DHS sent it to her attorney, not her. Chambers , 520 F.3d at 449. The Court concluded, "[w]e need not decide this dispute because Petitioner has waived her challenge to the service of the NTA [Notice to Appear]." Id. (citing McGuire v. Sigma Coatings, Inc. , 48 F.3d 902, 907 (5th Cir. 1995) (holding that in a civil case, it is well-settled that, "a person waives the defense of defective service if he voluntarily submits himself to the court's jurisdiction by appearing before it and allowing it to adjudicate his rights") ).
*1039 Sohani is also inapposite for the same reasons given its reliance on Qureshi v. Gonzales in which the 7th Circuit held that the defendant had waived any objection to a faulty certificate of service after it was admitted into evidence without objection. See Sohani , 191 Fed. App'x at 259 (citing 442 F.3d 985, 990 (7th Cir. 2006) ). Such jurisdictional challenges go to a court's lack of personal jurisdiction over the litigant, not a court's subject-matter jurisdiction over the case itself. Id. ; see Int'l Shoe Co v. State of Wash. Unemployment Comp. & Placement , 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Interpreting cases such as Chambers as involving the waiver of objections to the court's personal jurisdiction instead of its subject-matter jurisdiction accords with the general rule that objections to personal jurisdiction may be waived while objections to subject matter jurisdiction may not. Sohani , 191 Fed. App'x at 259 (citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée , 456 U.S. 694, 702-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The Court therefore declines to exempt immigration courts from this general rule, particularly in the absence of any binding authority directing it to do so.
Second, a plain reading of the relevant regulation indicates that it references subject-matter jurisdiction. See 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence , when a charging document is filed with the Immigration Court by the Service." (emphasis added) ). On its face, 8 C.F.R. § 1003.14(a) concerns whether a particular case is properly before an immigration court. This is the domain of subject-matter jurisdiction-what the Supreme Court was speaking of when it stated that courts have a duty to ensure that their jurisdiction "defined and limited by statute, is not exceeded." Louisville & Nashville RR Co. v. Mottley , 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) ; see also FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "[I]f the [deportation] order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." Wilson v. Carr , 41 F.2d 704, 706 (9th Cir. 1930). Therefore, when an undocumented immigrant's case rests on a void deportation, it must be dismissed. United States v. Virgen-Ponce , 320 F.Supp.3d 1164, 1166, 2018 WL 3655166, *2-3, 2018 U.S. Dist. LEXIS 125687, *6 (E.D. Wash. 2018).
The Government's assertion that a non-Article III court is somehow exempt from the rule that subject matter-jurisdiction can never be waived is invalid. See Resp., ECF No. 24, at 9; Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 16. Indeed, as the Supreme Court has explained, "[s]ubject-matter jurisdiction properly comprehended ... refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." Order, United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 16 (quoting Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region , 558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009) ); Shogunle v. Holder , 336 F. App'x. 322, 323 (4th Cir. 2009). Because the immigration court is a "tribunal"-that is, a "court of justice or other adjudicatory body," Tribunal, BLACK'S LAW DICTIONARY (10th ed. 2014)-the definition announced in Union Pacific applies, and challenges to the immigration court's subject-matter jurisdiction may not be waived. Order, *1040 United States of America v. Edgar Alfredo Valladares , No. 17-cr-00156, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 16.
Mr. Leon-Gonzalez successfully challenged the validity of the prior deportation, upon which the instant indictment is based, because his Notice to Appear failed to include the time and date of the hearing as required by 8 U.S.C. § 1229(a). Mr. Leon-Gonzalez was detained by immigration officials and issued a Notice to Appear shortly thereafter. The Notice to Appear stated the address where Mr. Leon-Gonzalez was to appear before an immigration judge, but it did not indicate the date and time of that hearing.
The Executive Office of Immigration Review encompasses the immigration court in El Paso, Texas that allegedly served a Notice of Hearing on Mr. Leon-Gonzalez. The Executive Office of Immigration Review, as part of the Department of Justice, is subject to the current Attorney-General-issued regulation that delimits the jurisdiction of the El Paso immigration court: "[j]urisdiction vests ... when a charging document is filed with the Immigration Court." This charging document is a Notice to Appear that complies with the statutory guidelines of § 1229(a) and includes the date and time of a removal hearing.
However, because the date and time are statutorily required and were missing, Mr. Leon-Gonzalez's Notice to Appear was void and therefore, could not vest jurisdiction in the El Paso immigration court. While the subsequent Notice of Hearing allegedly served on Mr. Leon-Gonzalez stated the date and time of the removal proceeding, the Supreme Court has ruled that this two-step process is not sufficient. And even though he appeared and did not object to this deficit, subject matter jurisdiction cannot be waived.
Thereafter, the void 2011 removal order was the predicate for the instant Indictment. Therefore, as discussed in the next section, the Government cannot meet a necessary element of illegal reentry because Mr. Leon-Gonzalez was never removed as a matter of law.
3. A Void Removal Means Mr. Leon-Gonzalez Was Not "Removed" as a Matter of Law, and Therefore His Indictment for Illegal Reentry Shall Be Dismissed.
To convict under 8 U.S.C. § 1326(a), the Government must prove three elements: "that the defendant (1) is an alien, (2) was previously deported, and (3) has re-entered the United States without proper permission." Ortiz , 347 F.Supp.3d at 405, 2018 WL 6012390, at *1, No. 18-CR-00071-RWG, 2018 U.S. Dist. LEXIS 190986, at *3. Title 8 U.S.C. § 1229(a) grants immigration judges the authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." Id. at 405, at *2, 2018 U.S. Dist. LEXIS 190986, at *3-4 (citing 8 U.S.C. § 1229a(a)(1) ); Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *2, 2018 U.S. Dist. LEXIS 187870 at *5. Such proceedings "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." Ortiz , 347 F.Supp.3d at 405, 2018 WL 6012390, at *2, No. 18-CR-00071-RWG, 2018 U.S. Dist. LEXIS 190986, at *4 (citing 8 U.S.C. § 1229a(a)(3) (emphasis added) ); Cruz-Jimenez , No. 17-CR-00063-SS, 2018 WL 5779491 at *2, 2018 U.S. Dist. LEXIS 187870 at *5 (emphasis added).
The Government argues that the "lawfulness or validity of a prior removal order is not an element of a § 1326 offense." Resp., ECF No. 24, at 19. It cites *1041 to United States v. Mendoza-Lopez for the proposition that the Government need only prove "the fact of a prior removal." Id. at 19 (citing 481 U.S. 828, 834-35 and n.9, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ). However, Mendoza-Lopez supports rather than detracts from Mr. Leon-Gonzalez's arguments because Mendoza-Lopez , unlike this opinion, was focused on the § 1326(d) factors and an alleged lack of due process, rather than a more severe lack of subject matter jurisdiction, and yet it still found that a collateral attack could be mounted where the deportation proceeding effectively eliminate[d] the right of the alien to obtain judicial review." Mendoza-Lopez , 481 U.S. at 839, 107 S.Ct. 2148. The exhaustion and judicial review requirements in § 1326(d) are directed at examining decisions that may not comport with due process and surely that standard requires an immigration judge's decision be anchored in an exercise of proper jurisdiction. United States v. Omniel Robaina Ortiz , No. 18-CR-00071-RWG, 347 F.Supp.3d 402, 406-07, 2018 WL 6012390, at *3-4, 2018 U.S. Dist. LEXIS 190986, at *9 (D.N.D. Nov. 7, 2018) (citing United States v. Mendoza-Lopez , 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ). Finally, unlike the Government's assertion, this is not a question of a "valid" or "invalid" removal order, but the occurrence of a "legal nullity." See supra 1029-30.
As discussed above, the immigration court did not have jurisdiction to remove Mr. Leon-Gonzalez, so when the immigration court in El Paso ordered Mr. Leon-Gonzalez removed a legal nullity resulted. Without an order of removal or deportation from an immigration judge, the Government cannot now prosecute its charge of illegal reentry because the second element of 8 U.S.C. § 1326(a) cannot be proven.
CONCLUSION
After due consideration, the Court finds that Defendant's Motion should be granted. The immigration court lacked subject matter jurisdiction when it failed to comply with the statutory guidelines by proceeding with removal when the Notice to Appear, the charging document that vests jurisdiction in the court, lacked a date and time. Therefore, the Government cannot satisfy the plain language of § 1326 because Mr. Leon-Gonzalez was not removed as a matter of law.
Accordingly, IT IS HEREBY ORDERED that Defendant Juan Miguel Leon-Gonzalez's "Motion to Dismiss Indictment" is GRANTED .

Mr. Leon-Gonzalez argues that he meets the § 1326(d) three-part test and that he was deprived of due process, however further discussion of these issues it not necessary to the outcome of this opinion given the immigration court's lack of subject matter jurisdiction. But this Court agrees and adopts the analysis of Judge Pitman in his recent opinion regarding the satisfaction of the § 1326(d) three-part test in an almost identical context. See United States v. Lopez-Urgel , No. 18-cr-310-RP, 2018 WL 5984845, 2018 U.S. Dist. LEXIS 193858 (W.D. Tex. Nov. 14, 2018).

While the Government mentions that other charging documents exist, it does not assert that any other charging document was filed in this case. See Resp., ECF No. 24, at 13.

For further discussion, see Kit Johnson, Pereira v. Sessions: A Jurisdictional Surprise for Immigration Courts , 3 HRFR Online 1, (2018).

In March 2003, the Immigration and Naturalization Service ("INS") ceased to exist and its functions were transferred to the Department of Homeland Security. See Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 Fed. Reg. 10922 (Mar. 6, 2003).

Seesupra 1032-33 for discussion of regulatory framework for vesting jurisdiction in immigration courts.